UNITED STATE DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERQUEST, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08 C 483 |
| v. ) | |
| ) | Honorable Milton I. Shadur |
| N'Site Solutions, Inc., et al., ) | |
| ) | Magistrate Judge Michael T. Mason |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
## AND HEARING REQUEST

N'Site Solutions, Inc. n/k/a ClaimHub, Inc. ("N'Site") and Unitrin Direct Insurance Company ("UDIC"),[1] hereby supplement their Motion (the "Motion") to Dismiss Hyperquest, Inc.'s ("HQ") Complaint for Injunctive Relief and Damages for Lack of Subject Matter Jurisdiction.

HQ claims, in its Complaint, that it is the "exclusive" licensee of a copyright in certain software (referred to in the Complaint and herein as "eDocs") allegedly[2] owned by Safelite Group, Inc. ("Safelite") (Compl. at ¶¶23, 24.) HQ also avers that N'Site, by using some or all of eDocs, is in violation of HQ's license. (Compl. at ¶¶34, 35.) In fact, HQ does not have an "exclusive" license and, thus, HQ lacks the standing to pursue this

---

[1] Plaintiff's complaint names "Unitrin Direct Auto Insurance" as a defendant in addition to N'Site. As pointed out in Unitrin Direct Insurance Company's Motion to Dismiss for Insufficient Process, Unitrin Direct Auto Insurance is not a corporate entity. To the extent the Court determines it is premature for UDIC to be joining the present motion, UDIC will withdraw itself from this motion and re-file a separate Rule 12(b)(1) motion in response to a complaint being served on UDIC, should that occur. UDIC joins the present motion to streamline the process and out of an abundance of caution in order to avoid inadvertently waiving any of its rights.

[2] No statement or argument made by Defendants in this Memorandum, or the Motion it accompanies, should be construed as an admission of any factual averment contained in the Complaint.

action against N'Site. Moreover, because HQ lacks standing to pursue an infringement claim against N'Site, it lacks standing to pursue UDIC as well. N'Site's and UDIC's arguments in this regard follow:

A. Standard of Review.

This Court need not accept as true HQ's allegations in its pleading and may accept other evidence submitted by the parties to consider standing.

> "When deciding a motion to dismiss based upon [Fed. R. Civ. P.] 12(b)(1), the court construes the complaint liberally and is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions of subject matter jurisdiction. *Reason* [*v. Heslin*]*,* 723 F.Supp. [1309,] 1311 [(S.D. Ind. 1989)]. Furthermore, the court may look beyond the jurisdictional allegations to examine any evidence submitted to determine if subject matter jurisdiction in fact exists. *Roman v. U.S. Postal Service,* 821 F.2d 382, 385 (7th Cir.1987) (*citing Grafon Corp. v. Hausermann,* 602 F.2d 781, 782 (7th Cir.1979)); *Sprague v. King,* 825 F.Supp. 1324 (N.D.Ill.1993), *aff'd,* 23 F.3d 185 (7th Cir.), *cert. denied,* 513 U.S. 946, 115 S.Ct. 356, 130 L.Ed.2d 310 (1994)."

*Althin CD Med., Inc. v. West Suburban Kidney Center, S.C.*, 874 F.Supp. 837, 840 (N.D. Ill. 1995).

In the instant matter, HQ included (as an exhibit to its Complaint) the agreement between it and Safelite by which, HQ alleges, it received its purportedly "exclusive" rights in the eDocs copyright. (*See* **Compl. Exhibit "B"**, a copy of which is attached hereto as **Exhibit "1"** and referred to herein as the "Agreement".)[3] This Court may look to the Agreement, the Complaint and other evidence when determining standing.

---

[3] There can be no doubt that HQ believes the Agreement, attached as Exhibit "1", is authentic and relevant. HQ attached the Agreement as an exhibit to its Complaints in this action and in another matter pending before this Court. *See Hyperquest, Inc. v. NuGen I.T., Inc., et al.,* Civil Action No. 08-485 (Norgel, J., presiding).

Moreover, the burden to establish its standing rests with HQ. Standing cannot be "inferred" from the averments in the pleadings and "must affirmatively appear in record". *Id.* Instead, it is HQ's burden "to allege enough facts to demonstrate that it is the party with standing in the case." *Id.*

B.   HQ is a Non-Exclusive Licensee Lacking Standing To Pursue N'Site.

Only a legal or beneficial owner of an "exclusive" right under a copyright is entitled to institute an action for any infringement of that particular right. HQ rightly never claims ownership of the eDocs copyright. Instead, HQ claims to be the "exclusive licensee" of the copyright and, thereby, alleges its entitlement to enforce the copyright. Despite HQ's characterization of its rights as "exclusive", Agreement between the Safelite and HQ tells a very different story. Simply put, the Agreement does not render HQ an "exclusive licensee", as that term has been interpreted **by this Court** under the Copyright Act of 1976. Thus, as more fully explained below, HQ lacks standing to pursue this action.

   1.   Only an "Exclusive" Licensee Can Enforce a Copyright.

   "Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C. § 501(b). Section 501(b) provides that '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it.' . . . .**[I]f the owner, assignee or exclusive licensee grants only a nonexclusive license, the recipient has no standing to sue for copyright infringement**. *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 526 F.Supp. 1187, 1190 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 697 F.2d 27 (2d Cir.1982); NIMMER, *supra,* at § 12.02[B]; GOLDSTEIN, *supra,* at § 13.5.1.1."

*Althin CD Med., Inc.*, 874 F. Supp at 842 (emphasis added); s*ee, e.g., Latin Amer. Music Co. v. Archdiocese of San Juan*, 135 F.Supp.2d 284 (D.P.R. 2001); *Broadcast Music, Inc. v. CBS, Inc.*, 221 U.S.P.Q. 246 (S.D.N.Y. 1983); *see also* STANDING TO SUE FOR COPYRIGHT INFRINGEMENT UNDER 17 U.S.C.A. § 501(b), 82 A.L.R. Fed. 509 (1987 & Supp. 2008).

Thus, where merely a non-exclusive license in granted, the licensee (*i.e.,* HQ in the instant matter) lacks standing to enforce the copyright against alleged infringement.

2. <u>The Substance (Not the Label) of the License Governs Exclusivity.</u>

"Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Althin CD Med., Inc.*, 874 F. Supp at 844. Thus, HQ cannot merely claim that it is an "exclusive" licensee without this Court analyzing the specific rights granted to HQ, and retained by the licensor (*i.e.*, Safelite), by the very text of the Agreement. *Id.*

3. <u>HQ Does Not Hold an Exclusive License Because Safelite Retained Enforcement Rights.</u>

Although the Agreement in this matter purports to be "exclusive", it is not. The so-called "exclusive" grant given in §2(a) of the Agreement (the sole section of the Agreement cited in the Complaint) is subject to the exceptions expressly enumerated in §2(b) (a section completely ignored in the Complaint). These exceptions render the grant to HQ non-exclusive. Specifically, the express terms of §2(b) of the Agreement condition HQ's license.

> " . . . HQ acknowledges the eDocs Software is licensed . . . to N'Site Solutions, Inc. . . . Safelite covenants to HQ that prior to April 1, 2006, Safelite shall notify N'Site, in

> writing, of Safelite's intention to terminate [N'Site's License] and further covenants to take whatever action (if any) Safelite deems appropriate (1) to enforce its rights under the License . . . and (2) to terminate the License . . . ." (*See.* **Exhibit "1"** at §2(b).)

Thus, it is clear that Safelite, the alleged owner of the copyright in eDocs, (a) granted HQ a license **subject** to N'Site's use of the copyrighted materials and, most important, (2) **reserved to itself** the sole discretion to enforce the copyright against N'Site and the sole right to terminate N'Site's license. Specifically, the agreement with HQ stated that Safelite would take "whatever action (if any) Safelite deems appropriate . . . to enforce its rights under . . ." its license with N'Site and the sole right "to terminate the" N'Site license. This provision can only be read to mean that Safelite retained enforcement rights and termination rights under the agreement and it retained the sole discretion to take (<u>or not to take</u>) enforcement actions against N'Site.

Whenever a licensor of a copyright retains enforcement rights, the licensee does not receive an "exclusive" license. "Once the copyright owner grants an <u>exclusive</u> license of particular rights, <u>only the exclusive licensee and not the original owner can sue</u> for later infringements of such rights." *Althin CD Medical, Inc.*, 874 F.Supp. at 842 (emphasis added) (citing *Essex Music, Inc. v. ABKCO Music and Records, Inc.,* 743 F.Supp. 237, 242 (S.D.N.Y.1990) (*quoting* 3 M. NIMMER AND D. NIMMER, NIMMER ON COPYRIGHT, § 12.02, P. 12-29, N. 13 (1990))). Thus, in order for the grant of a license to be considered "exclusive", the licensee must also have received the sole right to enforce the license. Whatever right HQ did get from Safelite, one thing is certain: Safelite retained the right and discretion to enforce the agreement against N'Site, as well as the right to terminate the N'Site license. Therefore, HQ did not get, and does not have, an

exclusive license and is not an "exclusive licensee" with standing to pursue this matter against N'Site.

    4. <u>The Agreement Contains Other Restrictions Inconsistent with the Grant of An Exclusive License.</u>

In addition to the above, the license contains additional restrictions which are inconsistent with the grant of an exclusive license.  For example, in section 3(b) Safelite places restrictions on what HQ can do with the Full Integration Software (software into which the eDoc software has been integrated).  More specifically, the Agreement states "[p]rior to transferring, licensing, or assigning the Full Integration Software to any person listed on Schedule 3(b), HQ must obtain the prior written consent of Safelite which consent may be withheld at Safelite's sole discretion."  Additionally, the Agreement provides in section 2(a), "[n]otwithstanding the foregoing, HQ may not, without the prior written consent of Safelite, which consent shall not be unreasonably withheld, rent, sell, lease, transfer or sublicense the eDoc software to any person or entity that competes with Safelite in the manufacture, distribution, or sale of automotive glass or related services, including but not limited to, those competitors set forth on Schedule 2(a)."  Furthermore, the Agreement states in section 2(a) that HQ ability to sub-license third-parties is restricted in that any sub-license agreement must "provide that such third party (i) shall have no right, license, or authority to sub-license, rent, or grant access to all, or any party, of the eDoc Software to any person or entity."  These restrictions provide further evidence that HQ did not get, and does not have, an exclusive license and is not an "exclusive licensee" with standing to pursue this matter.

### C. HQ Similarly Lacks Standing to Pursue UDIC.

Unitrin Direct Auto Insurance is asserted, in the Complaint, to have purchased, copied, modified, distributed, and used "infringing" software from N'Site. (*Compl.* at ¶34.) These actions, HQ alleges, amount to copyright infringement of its license. (*Compl.* at ¶34, 35.) Essentially, HQ has alleged that Unitrin Direct Auto Insurance is a sub-licensee of the eDocs copyright licensed through N'Site. For the same reasons stated above, HQ lacks standing to file an enforcement action because it was never an "exclusive" licensee. Moreover, any action against UDIC for violation of the eDocs copyright belongs, if to anyone, to Safelite because UDIC received its sub-license through N'Site. Again, as argued above, Safelite holds the exclusive right to enforce the N'Site license and HQ's license is merely non-exclusive. For this reason, HQ cannot pursue this action against UDIC for want of standing.

### D. Conclusion.

Because HQ is not an exclusive licensee under the Copyright Act, it lacks authority to sue to enforce the eDocs copyright. Because HQ lacks standing, this matter must be dismissed with prejudice as to all counts and all Defendants for lack of subject matter jurisdiction.

Respectfully submitted,

Steven L. Tiedemann
Illinois ARDC# 24794
Tiedemann@stronghold-advisors.com
8820 Columbia 100 Parkway, Suite 400

Columbia, Maryland 21045
(410) 884-1960
(410) 884-1457 (fax)

Attorney for N'Site Solutions n/k/a ClaimHub, Inc.


s/ Paul R. Kitch
Paul R. Kitch
pkitch@nixonpeabody.com
Jodi Rosen Wine
jwine@nixonpeabody.com
Elizabeth W. Baio
ebaio@nixonpeabody.com
NIXON PEABODY LLP
161 N. Clark St., 48th Floor
Chicago, IL 60601
(312) 425-3900

Attorneys for Unitrin Direct Insurance Company