# EXHIBIT 1
# TO
# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Execution Copy

## SOFTWARE LICENSE AGREEMENT

This Software License Agreement (the "License Agreement") is made and entered into as of the 6th day of July, 2004, by and between HQ, Inc., an Illinois corporation ("HQ"), and Safelite Group, Inc., a Delaware corporation ("Safelite"). HQ and Safelite hereinafter sometimes are referred to, individually, as a "Party" and, collectively, as "Parties."

### RECITALS

A. Safelite owns all rights to collision claims management software commonly referred to as eDoc ("eDoc Software").

B. Safelite and HQ have entered into an Agreement dated as of the date hereof (the "Master Agreement") pursuant to which Safelite has agreed to license to HQ the source code for the eDoc Software, subject to the terms and conditions set forth in this License Agreement.

NOW, THEREFORE, in consideration of the foregoing Recitals, which are specifically incorporated herein by this reference, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Definitions.**

   (a) **"HQ Services"** means those services HQ provides to various users and industries including, but not limited to, the insurance, professional repair and parts supply industries for the purpose of ensuring the proper identification, selection, procurement and use of parts and for the purpose of reporting information on such activities and related processes. HQ Services does not include the eDoc software.

   (b) **"HQ Modifications"** means all modifications, derivative works, adaptations, partial versions or improvements of or to the eDoc Software authored, invented, developed, conceived or first reduced to practice by HQ. All HQ Modifications shall be deemed a part of the eDoc Software.

   (c) **"HQ System"** means HQ's system, consisting of hardware and equipment used by HQ upon which is installed HQ's software and data used to perform the HQ Services and support HQ's business.

   (d) **"Intellectual Property Rights"** means patent, copyright, trade secret, trademark, source codes, object codes or other proprietary rights.

   (e) **"Market Ready"** means that HQ is prepared to offer the eDoc Software product to its customers.

(f) "Other Documents" shall mean the Master Agreement, the Note (as defined in the Master Agreement), the Security Agreement (as defined in the Master Agreement) and the Shareholders Agreement (as defined in the Master Agreement).

(g) "Territory" means the United States of America and Canada.

2. **License Grant.**

(a) Grant To HQ. Subject to all limitations and obligations set forth in this License Agreement, Safelite grants to HQ a perpetual (subject to termination only as provided in Section 4), worldwide, exclusive (except as set forth in Section 2(b)) license (i) to use the eDoc Software, in source code form, to support the development and commercialization of HQ Services, and (ii) to develop, modify and enhance the eDoc Software as HQ in its sole discretion determines; provided, that such modifications and enhancements are solely related to the development and commercialization of HQ Services. The term "use" means use, copy, reproduce, make, have made, store, demonstrate, market, promote, display, give access to, transmit, communicate, perform, adapt, modify, prepare derivative works based upon, develop, import, rent, lease and/or sublicense the eDoc Software to a third party pursuant to an agreement, the terms of which shall provide that such third party: (i) shall have no right, license, or authority to sub-license, rent, or grant access to all, or any part, of the eDoc Software to any person or entity; (ii) shall have no right to use the terms "eDoc" or "Safelite" in any promotional or advertising materials created or published in relation to such third party's use of the eDoc Software; (iii) shall indemnify, defend, and hold Safelite, its directors, officers, subsidiaries, agents, and employees (collectively, "Safelite Indemnitees"), harmless from and against any and all claims, damages, liabilities, costs, judgements, and fees (including reasonable attorney fees) incurred by Safelite Indemnities in relation to any breach by such third party of it agreement with HQ or in relation to any unauthorized use by such third party of the eDoc Software. Notwithstanding the foregoing, HQ may not, without the prior written consent of Safelite, which consent shall not be unreasonably withheld, rent, sell, lease, transfer or sublicense the eDoc Software to any person or entity that competes with Safelite in the manufacture, distribution, or sale of automotive glass or related services, including but not limited to, those competitors set forth on Schedule 2(a).

(b) Exclusivity. Except as otherwise provided in this Section 2(b), HQ's license to the eDoc Software is exclusive in the Territory. Such exclusivity shall terminate if a Sale of of HQ (as defined in the Master Agreement) occurs prior to July 5, 2009. Safelite shall have the right to use the eDoc Software and may license the eDoc Software to third parties solely for purposes of testing or development. Safelite will not use the eDoc Software in a manner that competes with HQ Services, except as part of Safelite's claims management solutions which does and will include a comprehensive estimate audit capability. Safelite's comprehensive estimate audit capability will provide for the auditing of an entire estimate and/or specific line items within an estimate for the

purpose of adherence and reporting. However, Safelite's comprehensive estimate audit capability will not encompass adherence to part use rules, reporting on parts usage, adherence to insurance operating guidelines for estimate development as related to parts, or for the determination, provisioning, or procurement of correct parts through its own or another company's database of parts, except to the extent that these services are used for the sole purpose of identifying and addressing auto glass parts. Notwithstanding the foregoing, HQ acknowledges the eDoc Software is licensed ("License") to N'SITE Solutions, Inc. ("N'SITE"). HQ further acknowledges Safelite and N'SITE are presently negotiating the terms of a revised license ("Revised License") regarding N'SITE's use of the eDoc Software. Safelite represents and warrants to HQ that Safelite has delivered to HQ a true and accurate copy of the latest draft of the Revised License and a true and accurate copy of the Software Application Services and Integration Agreement ("Services and Integration Agreement") dated as of April 1, 2001, by and between N'SITE and Quivox Systems Incorporated. HQ acknowledges receipt of a copy of the Revised License and the Services and Integration Agreement. Safelite covenants to HQ that prior to April 1, 2006, Safelite shall notify N'Site, in writing, of Safelite's intention to terminate the Original License and/or the Revised License in accordance with their respective terms and further covenants to take whatever action (if any) Safelite deems appropriate (1) to enforce its rights under the License and/or Revised License and (2) to terminate the License and/or Revised License. Safelite agrees to periodically apprise HQ of the status of its discussions with N'SITE regarding the execution of the Revised License and in the event the Revised License is modified to include terms substantially different than the Revised License provided to HQ, Safelite will advise and include HQ in the determination of the final terms of the Revised License.

(c) Support. Safelite shall make its employees listed on Schedule 2(c) available to HQ at HQ's request, without charge to HQ and on the terms and conditions set forth in Schedule 2(c) in order to support and advise HQ with respect to the development, marketing, deployment and ongoing support of the eDoc Software.

(d) Royalty. HQ will pay Safelite a royalty as follows: (i) before Full Integration if HQ uses all or any part of eDoc Software to process a claim, the lesser of (x) 7.5% of all fees associated with such claim processing or (y) $1.50 per claim processed and (ii) after Full Integration, all claims processed by HQ, except where HQ can demonstrate and document that the functionality of the eDoc Software was not used in whole or in part, the lesser of (x) 7.5% of all fees associated with such claim processing or (y) $1.50 per claim invoiced. HQ shall generate a report setting forth all claims invoiced by HQ each month and shall pay the royalties due to Safelite on a monthly basis within niney (90) days after the end of each calendar month.

(e) Audit. During the Term of this License Agreement, Safelite shall have the right to audit, including by inspecting the books and records of HQ to verify HQ's compliance with the terms of Section 2(d). Safelite shall conduct such audits upon at least ten (10) days prior written notice, during HQ's normal business hours and in such a manner as not to interfere unreasonably with HQ's normal business operations.

Safelite may conduct such audits from time to time, but not more than once every six (6) months, as Safelite deems necessary to determine if HQ is making proper royalty payments in compliance with Section 2(d). HQ shall pay such audit expenses if such audit shows underpayment of royalty payments of 10% or more.

(f) HQ agrees that the source code for the eDoc Software are Safelite's Confidential Information (as defined below) and shall treat and handle eConfidential iInformation in accordance with Section 7.

(g) HQ shall have the eDoc Software Market Ready by the first anniversary of the Effective Date.

(h) HQ shall timely provide HQ's updates and patches of the HQ Modification, if any, to Safelite in accordance with Schedule 2(h).

3. Ownership.

(a) Ownership prior to Full Integration. Subject to Section 3(b) below, all right, title and interest in and to the eDoc Software (including, but not limited to, all Intellectual Property Rights) will remain the exclusive property of Safelite, and all right, title and interest in and to the HQ Modifications shall vest in Safelite upon creation. Subject to Section 3(b) below, all Intellectual Property Rights in or related to the eDoc Software are and will remain the exclusive property of Safelite, and all Intellectual Property Rights in or related to the HQ Modifications will be the exclusive property of Safelite. Subject to Section 3(b) below, HQ assigns all rights, title, and ownership interest in the HQ Modification to Safelite. HQ agrees to enter into any additional documents reasonably necessary to perfect Safelite's ownership rights.

(b) Ownership after Full Integration. The eDoc Software will be fully integrated and embedded into the HQ System to a degree that the eDoc Software will no longer be identifiable as a software program independent of the other components of the HQ System (the completion of that process being "Full Integration" and the resulting software or system being "Full Integration Software"). HQ and Safelite will jointly determine when Full Integration is accomplished. HQ will not accomplish Full Integration within 2 years of the date of this License Agreement without Safelite's consent. Promptly following Full Integration, HQ will deliver to Safelite a written notice setting forth the date on which Full Integration was accomplished accompanied by a copy of the eDoc Software with all HQ Modifications thereto (including source code, object code and all required instructions) as of Full Integration. All modifications to the Full Integration Software made by HQ from and after Full Integration ("Future Modifications") will not be considered "HQ Modifications" but will become part of the Full Integration Software. Subject to Safelite's rights under this Agreement and the Master Agreement, HQ will own all right, title and interest in and to the Future Modifications, and all Intellectual Property Rights in or related in the Future Modifications will be the exclusive property of HQ. Prior to transfering, licensing, or

assigning the Full Integration Software to any person listed on Schedule 3(b), HQ must obtain the prior written consent of Safelite which consent may be withheld at Safelite's sole discretion.

(c) <u>Ownership of HQ System</u>. In no event shall Safelite have any right, title or interest in the HQ System or any part thereof other than through Safelite's ownership interests in HQ.

4. <u>Term and Termination</u>.

(a) <u>Term</u>. This License Agreement will commence on the Effective Date and continue in perpetuity, unless earlier terminated as provided herein.

(b) <u>Termination for Breach</u>. Either Party may terminate this License Agreement upon ninety (90) days written notice to the other Party if the other Party has committed an Event of Default under this License Agreement and such Event of Default is not cured within such ninety (90) day period. Notwithstanding anything in this Agreement to the contrary, in the event of a material breach by HQ of it obligations under Sections 2(a) or 7 of this Agreement, Safelite shall have the right to declare HQ in violation of its obligations hereunder. If HQ materially breaches its obligations under Section 2(a) or 7 of this Agreement, HQ shall have the limited right to continue to use the eDoc Software, HQ Modifications and Future Modifications for a period of forty-five (45) days from the date of Safelite's written notice to HQ generally identifying such breach. At the option of Safelite, all rights granted to HQ hereunder shall terminate on the expiration of any such forty-five (45) day period. The Parties acknowledge and agree that the occurrence of one or more of the following events shall constitute an event of default ("Event of Default"):

(i) if a Party materially breaches or fails or neglects to perform, keep or observe any material provision, covenant or term of this License Agreement or any Other Document;

(ii) if any representation or warranty made by a Party in this License Agreement shall prove to have been inaccurate or untrue in any material respect on the date when made or deemed to have been made; or

(iii) if a Party ceases to do business or becomes insolvent or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; if a petition under any foreign, state, or United States bankruptcy act, receivership statute, or the like, as they now exist, or as they may be amended, is filed by a Party; or if such a petition is filed by any third party, or an application for a receiver is made by anyone.

(c) <u>Termination for Failure to have eDoc Software Market Ready</u>. Safelite may terminate this License Agreement by delivering written notice of

termination to HQ within fifteen (15) days after the first anniversary of the Effective Date if the eDoc Software is not Market Ready prior to the first anniversary of the Effective Date. Safelite agrees that it shall not license the HQ Modifications to a third party if Safelite terminates this License Agreement pursuant to this Section 4(c) unless Safelite pays to HQ a mutually agreed upon amount; provided, that, in determining such amount, Safelite shall receive full credit for the costs and expenses associated with the support services provided by Safelite pursuant to Section 2(c).

(d) Obligations On Termination. Within ten (10) days after termination of this License Agreement, (i) HQ shall cease all use of the eDoc Software, HQ Modifications and Future Modifications (provided, however, in the event of a material breach by HQ of Sections 2(a) or 7 of this Agreement, HQ shall cease all use of the eDoc Software, HQ Modifications and Future Modifications in accordance with the terms of Section 4(b) above), and (ii) pay Safelite any accrued but unpaid royalty fees within thirty (30) days after the termination of this License Agreement. HQ will deliver to Safelite or destroy, as directed by Safelite, and certify in writing to Safelite of such destruction, any full or partial copies of eDoc Software received hereunder, HQ Modifications and Future Modifications, in HQ's possession or under its control Safelite within thirty (30) days after termination of this License Agreement.

(e) Survival. Subject to this Section 4 (Term and Termination), the provisions set forth in Sections 3 (Ownership), 4(d) (Obligations on Termination), 4(e) (Survival), 6 (Limitation of Liability), 7 (Confidential Information), 8 (Indemnity) and 9 (Miscellaneous) will survive termination of this License Agreement.

5. **Warranties.**

(a) HQ Authority. (i) HQ has all requisite legal and corporate power to execute and deliver this License Agreement, to perform its obligations under this License Agreement and to consummate the transactions contemplated by this License Agreement, (ii) HQ has taken all corporate action necessary for the authorization, execution and delivery of this License Agreement and the consummate the transactions contemplated by this License Agreement, (iii) HQ has no agreement or understanding with any third party that interferes with or will interfere with its performance of its obligations under this License Agreement, (iv) HQ has obtained and will maintain all rights, approvals and consents necessary to perform its obligations under this License Agreement and (v) this License Agreement constitutes legal, valid, and binding obligations of HQ, enforceable against HQ in accordance with its respective terms except as enforcement thereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws, both state and federal, affecting the enforcement of creditors' rights or remedies in general from time to time in effect and the exercise by courts of equity powers or their application of principles of public policy.

(b) Safelite Authority. (i) Safelite has all requisite legal and corporate power to execute and deliver this License Agreement, to perform its obligations under

this License Agreement and to consummate the transactions contemplated by this License Agreement, (ii) Safelite has taken all corporate action necessary for the authorization, execution and delivery of this License Agreement and the consummate the transactions contemplated by this License Agreement, (iii) Safelite has no agreement or understanding with any third party that interferes with or will interfere with its performance of its obligations under this License Agreement, (iv) Safelite has obtained and will maintain all rights, approvals and consents necessary to perform its obligations under this License Agreement and (v) this License Agreement constitutes legal, valid, and binding obligations of Safelite, enforceable against Safelite in accordance with its respective terms except as enforcement thereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws, both state and federal, affecting the enforcement of creditors' rights or remedies in general from time to time in effect and the exercise by courts of equity powers or their application of principles of public policy.

(c) Non-Infringement. Except as set forth on Schedule 5(c), Safelite represents and warrants that it owns or has the right, under valid and enforceable agreements, to grant the license of the eDoc Software herein; the eDoc Software does not, and its use by HQ and its customers as contemplated by this License Agreement will not infringe or otherwise violate any Intellectual Property Rights or other proprietary rights of any third party, and Safelite has not received any charge, complaint, claim, demand or notice alleging any such infringement or violation. HQ represents and warrants that in connection with the use of the eDoc Software and HQ Modifications, it has not and shall not infringe on any Intellectual Property Rights or other proprietary right of any third party. Neither HQ nor any other company or individual involved with the use of eDoc Software and HQ Modifications is under any obligations to assign or give any work under this License Agreement to a third party.

(d) Disclaimer. EXCEPT AS SET FORTH ABOVE, NEITHER PARTY MAKES ANY OTHER REPRESENTATIONS AND WARRANTIES INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE.

6. **Limitation of Liability.**

(a) Disclaimer of Indirect Damages. NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, REGARDLESS OF THE FORM OF THE ACTION OR THE THEORY OF RECOVERY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF THOSE DAMAGES. SAFELITE SHALL NOT BE LIABLE TO HQ FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES FROM USE OF THE EDOC SOFTWARE IN A MANNER NOT AUTHORIZED BY THIS LICENSE AGREEMENT, USE OR INABILITY TO USE THE EDOC SOFTWARE AND LOSS OF DATA.

(b) <u>Exclusions</u>. Notwithstanding the foregoing, the limitations of liability set forth in this Article 6 will not apply to losses in connection with (i) death or personal injury caused by a Party; (ii) a Party's breach of the confidentiality provisions or or (iii) claims pursuant to the indemnification provisions set forth in Article 8.

7. <u>Confidential Information</u>.

(a) <u>Confidential Information</u>. Each Party has made and will continue to make available to the other Party information (including, without limitation, the source code for the eDoc Software) that is not generally known to the public and at the time of disclosure is identified, or would reasonably be understood by the receiving Party, to be proprietary or confidential ("**Confidential Information**"). Confidential Information may be disclosed in oral, written, visual, electronic or other form.

(b) <u>Obligations</u>. The receiving Party will use the same care and discretion to avoid disclosure, publication or dissemination of any Confidential Information received from the disclosing Party as the receiving Party uses with its own similar information that it does not wish to disclose, publish or disseminate (but in no event less than a reasonable degree of care). The receiving Party will be liable for any unauthorized disclosure or use of Confidential Information by any of its personnel, agents, subcontractors or advisors. The receiving Party will promptly report to the disclosing Party any breaches in security that may materially affect the disclosing Party and will specify the corrective action to be taken. Upon the termination of this License Agreement, each Party shall return to the other Party the Confidential Information of the other Party.

(c) <u>Third Party</u>. Subject to the terms and conditions herein, HQ may disclose Safelite's Confidential Information to any affiliates, contractors, consultants, and other third parties (the "Third Party") that have a need-to-know and are obligated to maintain the confidentiality of Safelite's Confidential Information upon terms similar to those contained in this License Agreement; provided, that the Third Party executes a non-disclosure and confidentiality agreement in form and substance attached hereto as <u>Schedule 7(c)</u>. HQ will be liable for any unauthorized disclosure or use of Safelite's Confidential Information by the Third Party. HQ will promptly report to Safelite any breaches in security that may materially affect Safelite and will specify the corrective action to be taken. HQ shall promptly deliver to Safelite a signed copy of all such confidentiality agreements.

(d) <u>Injunctive Relief</u>. HQ acknowledges that the unauthorized use, transfer or disclosure of the source code of the eDoc Software or any HQ Modifications will (i) substantially diminish the value to Safelite of the trade secrets and other proprietary interests that are the subject of this License Agreement; (ii) render Safelite's remedy at law for such unauthorized use, disclosure or transfer inadequate; and (iii) cause irreparable injury in a short period of time. If HQ breaches any of its obligations with respect to the use or confidentiality of the source code of the eDoc Software or HQ

Modifications, Safelite shall be entitled to equitable relief to protect its interests therein, including, but not limited to, preliminary and permanent injunctive relief.

(e) <u>Exceptions to Confidential Treatment</u>.

(i) <u>Exclusions</u>. The obligations set forth in <u>Section 7</u> do not apply to any Confidential Information that the receiving Party can demonstrate: (i) the receiving Party possessed prior to disclosure by the disclosing Party, without an obligation of confidentiality; (ii) is or becomes publicly available without breach of this License Agreement by the receiving Party; (iii) is or was independently developed by the receiving Party without the use of any Confidential Information of the disclosing Party; or (iv) is or was received by the receiving Party from a third Party that does not have an obligation of confidentiality to the disclosing Party.

(ii) <u>Legally Required Disclosure</u>. If the receiving Party is legally required to disclose any Confidential Information of the disclosing Party in connection with any legal or regulatory proceeding, the receiving Party will endeavor to notify the disclosing Party within a reasonable time prior to disclosure, and will allow the disclosing Party a reasonable opportunity to seek appropriate protective measures or other remedies prior to disclosure and/or waive compliance with the terms of this License Agreement. If these protective measures or other remedies are not obtained, or the disclosing Party waives compliance with the terms of this License Agreement, the receiving Party may disclose only that portion of that Confidential Information that it is, according to the opinion of counsel, legally required and will exercise all reasonable efforts to obtain assurance that confidential treatment will be accorded to that Confidential Information.

8. <u>Indemnity</u>.

(a) <u>Safelite Indemnification</u>. Safelite will indemnify, defend and hold harmless HQ and its officers, directors, employees, agents, successors and assigns from any and all third party claims to recover any and all losses, liabilities, damages and claims (including taxes), and all related costs and expenses, including reasonable legal fees and disbursements and costs of investigation, litigation, settlement, judgment, interest and penalties (collectively, "Losses"), due to third party claims arising from, or in connection with, (i) Safelite's breach of this License Agreement, (ii) any actual or alleged U.S. or Canadian infringement, violation or misappropriation of the Intellectual Property Rights of a third party by the eDoc Software (or the use of the eDoc Software) or (iii) grossly negligent or willful acts or omissions of or by Safelite or its personnel. The foregoing indemnity will not cover third party infringement claims (i) outside the United States and Canada, or (ii) to the extent resulting from HQ Modifications.

(b) <u>HQ Indemnification</u>. HQ will indemnify, defend and hold harmless

Safelite and its officers, directors, employees, agents, successors and assigns from any and all third party claims to recover any and all Losses due to third party claims arising from, or in connection with, (i) HQ's breach of this License Agreement, (ii) any actual or alleged infringement, violation or misappropriation of the Intellectual Property Rights of a third party by the HQ Modifications (or the use of the HQ Modifications) or the Future Modifications (or the use of the Future Modifications), or (iii) grossly negligent or willful acts or omissions of or by HQ or its personnel. The foregoing indemnity will not cover third party infringement claims to the extent resulting from modifications by any party other than HQ or HQ's employees, sublicensees, agents, representatives or licensees to the eDoc Software.

(c) Indemnification Procedures. The obligations of an indemnifying party under this Section 7 are subject to the conditions that: (i) the indemnifying party is notified promptly in writing by the indemnified party of any claim; (ii) the indemnifying party has sole control of the defense and all negotiation for any settlement or compromise; and (iii) the indemnified party reasonably assists the indemnifying party in the defense of the claim. No settlement or compromise that imposes any liability or obligation on any indemnified party will be made without such party's prior written consent (not to be unreasonably withheld).

9. **Miscellaneous.**

(a) Non-solicitation. Each Party covenants and agrees that it, directly or indirectly, shall not, during the term of this License Agreement and for a period of two years after the termination of this License Agreement, solicit any of the employees, consultants or subcontractors of the other Party.

(b) Notices. All notices, requests, demands, or other communications hereunder (including notices of all asserted claims or liabilities) shall be in writing and shall be either delivered personally, by messenger service, or by prepaid guaranteed overnight delivery service, or mailed by U.S. mail, certified or registered, with appropriate postage prepaid, to the addressees and addresses herein designated, or such other address as may be designated in writing by notice given in the manner provided herein, and shall be effective (a) upon personal delivery thereof, if delivered personally or by messenger service, (b) one (1) business day after delivery to the overnight delivery service for next business day delivery, if delivered by overnight delivery service, or (c) three (3) days following deposit in the U.S. mail if sent by mail, whether or not delivery is accepted:

To HQ:   HQ, Inc.
         1300 West Belmont Avenue
         Suite 200
         Chicago, IL 60657
         Attn: Jeff Hogan

|  |  |
|---|---|
| With a copy to: | Sachnoff & Weaver, Ltd.<br>30 S. Wacker Drive<br>29th Floor<br>Chicago, IL 60606<br>Attn: Stewart Dolin, Esq. |
| To Safelite: | Safelite Group, Inc.<br>2400 Farmers Drive<br>Columbus, OH 43235<br>Attn: Chief Financial Officer |
| With a copy to: | Safelite Group, Inc.<br>2400 Farmers Drive<br>Columbus, OH 43235<br>Attention: General Counsel |

or to such other place and with such other copies as any Party may designate as to itself by written notice to the other Parties.

(b) <u>Successors and Assigns; Third Party Beneficiaries</u>. This License Agreement will be binding upon the Parties and their respective successors, personal representatives, heirs and assigns; however, no Party will have any right to assign any of its rights and obligations pursuant to this License Agreement except with the prior written consent of the other Party, except that HQ may assign this License Agreement in connection with a Sale of HQ (as that term is defined in the Master Agreement) without Safelite's consent. Notwithstanding the foregoing, HQ must have the prior written consent of Safelite to assign this License Agreement in connection with a Sale of HQ prior to July 6, 2009 to Visteon Corporation, PPG Industries, Inc., Pilkington, or any affiliate or subsidiary thereof, or to any third party that, at the time of such Sale of HQ, competes with Safelite in the business of glass manufacturing or automotive glass repair or replacement.

(c) <u>Further Execution</u>. The Parties agree to execute any additional documents or instruments, and to take any and all other actions, necessary to carry out the purposes of this License Agreement.

(d) <u>Headings</u>. The headings herein are solely for the convenience of the parties and shall not serve to modify or interpret the text of the Sections at the beginning of which they appear.

(e) <u>Entire Agreement</u>. This License Agreement and the related agreements referred to herein constitute the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior communications, writings, and other documents with regard thereto. No modification, amendment, or waiver of any

provision hereof shall be binding upon any Party unless it is in writing and executed by all of the Parties or, in the case of a waiver, by the Party waiving compliance.

(f) <u>Governing Law; Jurisdiction</u>. This License Agreement shall be construed and governed in accordance with the internal laws of the State of Illinois, without regard to its choice of law principles. Each of the Parties hereby submits to the exclusive jurisdiction and venue of the federal and state courts presiding in Cook County, Illinois, with respect to any dispute concerning or arising out of this License Agreement.

(g) <u>Counterparts and Facsimile Signature</u>. This License Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. For purposes of executing and delivering this License Agreement or any of the other documents or instruments required hereunder, a signed document transmitted by facsimile machine ("Fax") shall be treated in all manner and respect as an original document. The signature of any Party by Fax shall be considered for these purposes as an original signature. Any such Fax shall be considered to have the same binding legal effect as an original document. At the request of either Party, any Fax document subject to this License Agreement shall be re-executed by both Parties in an original form. The Parties hereby agree that none of the Parties shall raise the use of the Fax or the fact that any signature or document was transmitted or communicated through the use of a Fax as a defense to the formation of this License Agreement.

(h) <u>Severability</u>. If any provision (in whole or in part) of this Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable, then such provision shall be deemed modified, restricted, or reformulated to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excised from this Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had been originally incorporated herein as so modified, restricted, or reformulated or as if such provision had not been originally incorporated herein, as the case may be. The parties hereto further agree to seek a lawful substitute for any provision found to be unlawful. If such modification, restriction or reformulation is not reasonably possible, the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected thereby and the provisions of this Agreement shall be severable in any such instance.

[Signature Pages Follows]

IN WITNESS WHEREOF, the undersigned have caused this License Agreement to be duly executed as of the day and year first above written.

HQ, INC.

_____
Jeffrey J. Hogan
Its: President

SAFELITE GROUP, INC.

_____
Douglas A. Herron
Its: Executive Vice President, CFO

07/06/2004 11:15 FAX                                                    ☒004

IN WITNESS WHEREOF, the undersigned have caused this License Agreement to be duly executed as of the day and year first above written.

HQ, INC.

*/s/ Jeffrey J. Hogan/*

Jeffrey J. Hogan
Its: President

SAFELITE GROUP, INC.

_____
Douglas A. Herron
Its: Executive Vice President, CFO

07/08/04 THU 12:18 FAX 6142109372    SAFELITE GLASS    ☒002

IN WITNESS WHEREOF, the undersigned have caused this License Agreement to be duly executed as of the day and year first above written.

HQ, INC.

_____
Jeffrey J. Hogan
Its: President

SAFELITE GROUP, INC.

_____
Douglas A. Herron
Its: Executive Vice President, CFO