UNITED STATE DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HYPERQUEST, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08 C 483 |
| N'Site Solutions, Inc., et al., | ) | **Honorable Milton I. Shadur** |
| Defendants. | ) | **Magistrate Judge Michael T. Mason** |

## N'SITE SOLUTIONS, INC'S REPLY TO HYPERQUEST'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendant, N'Site Solutions, Inc. n/k/a ClaimHub, Inc. ("N'Site"), hereby replies to Hyperquest, Inc.'s Opposition to Defendants' Motion to Dismiss Hyperquest, Inc.'s ("HQ") Complaint (the "Motion").

### *Brief Reply Argument*.

#### I.    Copyright Rights Are Divisible, But Power To Enforce Is Not.

HQ spends a great portion of its Opposition arguing a point about which there is no dispute.  N'Site acknowledges that "rights" granted under the Copyright act are divisible.  For example, a licensee may obtain an exclusive right to a geographic area or an exclusive right to use of a work via a particular medium.  However, in this case, the grantor (Safelite) retained the power to enforce, as to one potential infringer (N'Site), thus, the grant cannot be an exclusive grant.  And, as has been made clear before, a non-exclusive licensee cannot enforce the copyright in an infringement action.

HQ's confusion is best demonstrated by quoting its Opposition directly.  HQ boldly, and correctly, states that:

> "[t]he Copyright Act ["Act"]explicitly recognizes the divisibility of rights under a copyright and provides that the exclusive licensee of any exclusive right under a copyright has standing to bring an infringement action to enforce that right."  (*See* Opposition at 6.)

Of course, this is true.  But this does not alleviate HQ's standing problem.

Instead, when the grantor of the "rights" under the copyright retains the

power to enforce the copyright, then the grant is not exclusive.  Simply put,

HQ confuses the concept of a "right" under the Act and the power to

enforce that "right" under the Act.  The Act spells out certain "rights" and

also provides the mechanism by which a copyright owner or exclusive

licensee can enforce those "rights".  However, any "right" granted to a

licensee must be accompanied by the power to enforce the right, or the right

is not exclusive.  In this case, it is the power to enforce the rights under the

Act that was retained by Safelite.  Simply put . . .

- HQ argues "because the license says HQ is 'exclusive' HQ has standing to

sue"

- N'Site, on the other hand, argues "because Safelite expressly retained the right to enforce

its license with N'Site, HQ lacks the standing to sue because it did not get an exclusive

license."

        The concept that a "right" under the Act must accompany the power to enforce that

"right", in order for there to be an "exclusive" license, is well-established.  "Once the

copyright owner grants an <u>exclusive</u> license of particular rights, <u>only the exclusive licensee</u>

<u>and not the original owner can sue</u> for later infringements of such rights."  *Althin CD*

*Medical, Inc.*, 874 F.Supp. at 842 (emphasis added) (citing *Essex Music, Inc. v. ABKCO Music*

*and Records, Inc.,* 743 F.Supp. 237, 242 (S.D.N.Y.1990) (*quoting* 3 M. NIMMER AND D.

NIMMER, NIMMER ON COPYRIGHT, § 12.02, P. 12-29, N. 13 (1990))). A right under the Act and the power to enforce that right must go hand-in-hand. Because Safelite retained the power to enforce as to N'Site, HQ did not get an exclusive license and lacks the power to sue N'Site.

The end result is that HQ did not get the complete power to enforce the rights it allegedly received from Safelite. Safelite reserved some of those powers to itself. HQ now lacks the standing and authority to sue N'Site. An action against N'Site rests, if with anyone, with Safelite.

II.    N'Site's Failure To Admit Or Deny Violation Is Not Material At This Time

HQ also makes much of the fact that N'Site has not expressly stated whether N'Site retains any rights in the license it received from Safelite's alleged predecessor-in-interest, Quivox. In other words, HQ seems to imply that, because N'Site has not yet taken a position with regard to its use or non-use of the alleged copyrighted material (nor offered any "exculpatory" evidence), HQ must have the right to enforce. This just is not the case, for the following reasons:

1.  At this stage of the litigation, it is premature for N'Site to make any such admission. Standing is a preliminary issue that must be addressed before the Court may consider the merits of HQ's claim;

2.  The burden is clearly on HQ to prove its standing. *Althin CD Med., Inc. v. West Suburban Kidney Center, S.C.*, 874 F.Supp. 837, 840 (N.D. Ill. 1995); and

3.  Moreover, HQ is not without a remedy. According to HQ, it was promised by Safelite that Safelite would take certain actions with regard to N'Site. If it has a

complaint as to Safelite's performance of its promise with regard to N'Site, or if HQ

has any enforcement action to contemplate, it should be against Safelite.

### III.  There Is No Evidence That The Quivox-N'Site License Was Terminated

Finally, HQ has offered no evidence that N'Site's license of the copyrighted material

was, in fact, terminated.  The term of the license from Quivox (Safelite's alleged predecessor-

in-interest) was for a period of five (5) years and continued indefinitely "thereafter and [was]

automatically renewed for successive terms of one (1) year, unless either party" took certain

actions to cancel the license.  (*See* License, attached hereto as ***Exhibit "A"*** at §2.)

HQ states in its Opposition that "in any event, Safelite and HQ agreed that Safelite

would terminate the Quivox/N'Site [license] no later than April 1, 2006." Although that may

be the case, and certainly N'Site was not a party to the negotiations between HQ and

Safelite, that "fact" does not mean that Safelite did, in fact, cancel or terminate the

Quivox/N'Site license.  In fact, had Safelite take such an action, N'Site would have had the

opportunity to seek declaratory relief due to Quivox's multiple breaches of the license

agreement.  In any event, a promise between Safelite and HQ cannot alter N'Site's rights

under the prior license.

There simply is no evidence that Quivox, or Safelite, properly canceled or terminated

N'Site's license.  Again, if the license was not terminated, or if N'Site has otherwise violated

that license, then the action to enforce the license terms belongs to Safelite (if to anyone),

and not to HQ. This is precisely the reason why the law requires proper standing and why

HQ's Complaint must be dismissed.

### IV.    Conclusion.

Because HQ is not an exclusive licensee under the Copyright Act, and because Safelite

retained the authority to enforce the license, HQ lacks authority to sue to enforce the eDocs

copyright.   HQ lacks standing and this matter must be dismissed with prejudice for that reason as to all counts and all Defendants for lack of subject matter jurisdiction.

Respectfully submitted,

_____/s/_____
Steven L. Tiedemann

8820 Columbia 100 Parkway, Suite 400
Columbia, Maryland 21045
(410) 884-1960
(410) 884-1457 (fax)

Attorney for N'Site Solutions, Inc.

Certificate of Service

I hereby certify that on the 25th day of Feb, 2008, the above was served on counsel for Plaintiff, Deborah Hogan, and for Defendant, Unitrin Automobile Insurance Company, Paul Kitch, via the ECF system.

_____/s/_____
Steven L. Tiedemann