UNITED STATE DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERQUEST, INC. ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 08 C 483 |
| v. ) | |
| ) | Honorable Milton I. Shadur |
| N'Site Solutions, Inc., et al., ) | |
| ) | Magistrate Judge Michael T. Mason |
|     Defendants. ) | |

# UNITRIN DIRECT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**Table of Contents**

I.   BACKGROUND .................................................................................................................. 1

II.  ARGUMENT ...................................................................................................................... 1

    A.  Only An Exclusive Licensee Has Standing To Enforce The Particular Exclusive Rights Of Which It Has An Ownership Interest. ..................................................... 1

    B.  A Non-Exclusive Licensee Does Not Have Standing To Sue For Copyright Infringement. ................................................................................................................ 2

    C.  HyperQuest Is Not An Exclusive Licensee Because Safelite Retained The Power To Enforce The Copyright. ........................................................................................ 3

    D.  HyperQuest Does Not Possess Any Of Three "Exclusive" Rights It Alleges, and Thus Does Not Have Standing To Sue ................................................................... 3

        1.  Safelite Retained The Right To Reproduce, To Prepare Derivative Works Based Upon, And To Distribute The eDoc Software. ...................................... 4

        2.  N'Site Has The Right To Reproduce, To Prepare Derivative Works Based Upon, And To Distribute The eDoc Software. ................................................. 5

        3.  HyperQuest Does Not Have The Exclusive Right To Distribute The eDoc Software Because Safelite Placed Restrictions On HQ's Ability To Do So. ... 7

        4.  Safelite's Retention of Its Ownership Rights Is Confirmed By The Express Provisions Of The Safelite/HQ License Agreement. ........................................ 8

III. CONCLUSION ................................................................................................................... 9

Unitrin Direct Insurance Company ("UDIC"),[1] hereby submits its reply to the Opposition of Plaintiff HyperQuest, Inc. ("HyperQuest") to the Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## I.   BACKGROUND

This lawsuit involves allegations against two companies charging copyright infringement of certain software ("eDoc Software")—for which it has been alleged that UDAI paid N'Site a substantial sum of money, in good faith, to license. The sole issue before the Court is whether HyperQuest,[2] which claims to be an exclusive licensee of the software, has standing to sue for the alleged copyright infringement.

The issue of whether HyperQuest has standing to sue is completely separate from the question of whether the N'Site license agreement remains in force. If HyperQuest is not an exclusive licensee, then HyperQuest does not have standing to sue *anyone* for copyright infringement and this action should be dismissed in its entirety for lack of subject matter jurisdiction.

## II.   ARGUMENT

### A.   Only An Exclusive Licensee Has Standing To Enforce The Particular Exclusive Rights Of Which It Has An Ownership Interest.

Copyright is a creature of statute, and the only rights that exist under copyright law are those granted by statute. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883-

---

[1]   Plaintiff's complaint names "Unitrin Direct Auto Insurance" as a defendant in addition to N'Site. As pointed out in Unitrin Direct Insurance Company's Motion to Dismiss for Insufficient Process, Unitrin Direct Auto Insurance ("UDAI") is not a corporate entity. Although UDIC is not a party to the present lawsuit, UDIC submits the present Reply out of an abundance of caution in order to avoid inadvertently waiving any of its rights given that the Court has taken the Motion to Dismiss for Insufficient Process under advisement.

[2]   Plaintiff HyperQuest apparently alleges it acquired its right in the eDoc Software from HQ, Inc.

84 (9th Cir. 2005).   Under the Copyright Act, only a party with "ownership rights" as of the time the acts of infringement occurred has standing to sue for infringement of the copyright.  17 U.S.C. § 502(b).

A licensee may have standing to sue if ownership rights in the copyrighted work have been transferred to him by the copyright owner.  Ownership rights may be transferred by a grant of an exclusive license "of any of the exclusive rights comprised in a copyright."  *Id.* at § 101.[3]  Thus, the transferee of any particular exclusive right is entitled to all of the protections and remedies accorded to the copyright owner, but only to the extent of that right.  *Id.* at § 201(d).

Once an exclusive right is transferred, only the exclusive licensee may sue in his own name for infringement of the particular right that is licensed to him.  Not even the copyright owner has standing to enforce the ownership rights that he has transferred.  *See Althin CD Med., Inc. v. W. Suburban Kidney Ctr., S.C.*, 873 F. Supp. 837, 874 (N.D. Ill. 1995) (stating, "Once the copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for later infringement of such rights.").

    B.    <u>A Non-Exclusive Licensee Does Not Have Standing To Sue For Copyright Infringement.</u>

In contrast, the holder of a non-exclusive license does not have standing to sue for copyright infringement.  *A.E. Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).  This is because with a non-exclusive license the copyright owner has not completely transferred

---

[3] "A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." 17 U.S.C. § 101.

to the licensee ownership in one or more of the divisible rights in the copyrighted work. Instead, the copyright owner may have retained those rights for itself, may have retained the ability to convey those rights to others, or may have placed limits on the licensee's exercise of those rights.

      C.    <u>HyperQuest Is Not An Exclusive Licensee Because Safelite Retained The Power To Enforce The Copyright.</u>

Any "exclusive right" granted to a licensee must be accompanied by the power to enforce that right; otherwise, the right is not exclusive. *W. Electric Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930). "[T]he right to sue for infringement – is a valuable one; indeed, it one of the most valuable 'sticks' of the 'bundle of rights' of copyright." *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007).

This Court has indicated that HyperQuest lacks standing to sue N'Site because Safelite retained, for itself, the right to sue N'Site. Given that Safelite retained the right to sue N'Site, it necessarily means that HyperQuest does not own the exclusive right to bring suit for copyright infringement. It also means that, because Safelite reserved for itself the right to sue N'Site, the license that it granted to HQ, Inc. ("HQ") was not an exclusive license. Because HQ was not the exclusive licensee of the right to sue for copyright infringement, HyperQuest has no standing to sue UDIC, or anyone else, for copyright infringement. Therefore, this action against UDAI should be dismissed for lack of standing.

      D.    <u>HyperQuest Does Not Possess Any Of Three "Exclusive" Rights It Alleges, and Thus Does Not Have Standing To Sue.</u>

In opposition to the current motion, HyperQuest primarily argues that the license to N'Site only granted N'Site the right to use the eDoc Software. Thus, HyperQuest concedes that it does not have the exclusive right to use the software or to prevent others

from using the software. HyperQuest argues that it nonetheless has exclusive rights (a) to reproduce, (b) to prepare derivative works based upon, and (c) to distribute the eDoc Software. (*See* Pl.'s Opp'n, p. 9-10.) Thus, argues HyperQuest, it has standing to bring an infringement action to enforce those particular divisible rights.

As an initial matter, the Safelite/HQ license agreement granted non-exclusive rights to HQ, and not HyperQuest. Plaintiff has not provided any information on how it may have obtained those rights from HQ, Inc., and the burden of proving standing rests with Plaintiff. *See Althin*, 874 F. Supp. at 840 (standing cannot be "inferred" from the averments in the pleading but "must affirmatively appear in record").

Section 2(a) of the Safelite/HQ license purported to give to HQ the following rights:

> (a) Grant to HQ. Subject to all limitations and obligations set forth in this License Agreement, Safelite grants to HQ a perpetual [], worldwide, exclusive (except as set forth in Section 2(b)) license (i) to use the eDoc Software, in source code form, to support the development and commercialization of HQ Services, and (ii) to develop, modify and enhance the eDoc Software as HQ in its sole discretion determines; provided, that such modifications and enhancements are solely related to the development and commercialization of HQ Services.

Although this grant to HQ uses the term "exclusive," whether or not an agreement transfers rights that are exclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement. *Althin*, 874 F. Supp. at 843. A review of the substance of the license agreement at issue demonstrates that HyperQuest is incorrect that HQ was granted these three exclusive rights.

1. Safelite Retained The Right To Reproduce, To Prepare Derivative Works Based Upon, And To Distribute The eDoc Software.

The Safelite/HQ license agreement makes clear that Safelite retains the right to reproduce, license, distribute, and make derivative works based upon the eDoc Software.

For example, section 2(b) of this agreement provides "Safelite shall have the right to use the eDoc Software and may license the eDoc Software solely for purposes of testing and development." Exhibit A.1. to HyperQuest's Opposition. Safelite's right to license necessarily gives it the right to make copies of the eDoc Software and distribute them to its licensees. Likewise, "testing and development" necessarily indicates that Safelite has the right to modify and make derivative works of the eDoc Software.

A licensor's retention of such rights is antithetical to the grant of an exclusive license. *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) ("An exclusive license thus destroys the value of a copyright to the copyright owners, to the extent that the licensed rights cannot be used or exploited by the copyright owners"); BLACK'S LAW DICTIONARY 938 (8th ed. 2004) (defining exclusive license as "[a] license that gives the licensee the sole right to perform the licensed act . . . and that prohibits the licensor from performing the licensed act and from granting the right to anyone else").

Because Safelite retained the right to reproduce, distribute, and prepare derivative works of the eDoc Software, the license granted to HQ was non-exclusive.

      2.      <u>N'Site Has The Right To Reproduce, To Prepare Derivative Works Based Upon, And To Distribute The eDoc Software.</u>

Even before Quivox became insolvent and N'Site acquired rights in the source code of the eDoc Software (Complaint ¶¶ 12-13), N'Site possessed the right to make and distribute copies of the software at issue. For example, section 4 of the Quivox/N'Site license gives N'Site the right to make copies of the software and install the copies at different locations. Exhibit A.3. to HyperQuest's Opposition ("During the term of this Agreement, Customer [N'Site] may . . . 4.2 Install the Licensed Product only in its own facility(s) at location(s) specified by Customer in writing and approved by Quivox.").

Furthermore, the Quivox/N'Site license gives N'Site the right to distribute copies of the eDoc Software to other companies that N'Site controls.[4]  Additionally, Section 117 of the Copyright Act gives N'Site the right to reproduce the eDoc Software for archival purposes.  17 U.S.C. § 117(a) (2008).

Moreover, N'Site *did* acquire rights in the source code of the eDoc Software pursuant to the Source Code Escrow provision (section 11) of the Quivox/N'Site agreement ("a nonexclusive right to the Source Code shall be granted to Customer [N'Site] . . . .").  Exhibit A.3. to HyperQuest's Opposition.  Prior to invocation of the Source Code Escrow provision (section 11), N'Site only had a right to use the licensed product and Quivox was to provide N'Site with "professional consulting, software development and integration services" as requested by N'Site.  Exhibit A.3. to HyperQuest's Opposition, sections 1 and 4.

Thus, as originally envisioned, Quivox would develop and make derivative works of the eDoc Software pursuant to N'Site's needs, and N'Site would have the right to use the modified software.  The purpose of the Source Code Escrow provision of their agreement was to provide N'Site with means to carry out Quivox's responsibilities under the agreement should Quivox no longer be able to do so.  This is exactly what happened.  Quivox ceased operations, and N'Site received the rights Quivox had to the source code of the eDoc Software, including the right to make derivative works of that software.

---

[4]  *See* Exhibit A.3. to HyperQuest's Opposition, Quivox/N'Site Agreement at section 4.3 ("Quivox hereby grants to Customer (but not the Customer's Assignee) the limited right to assign this Agreement with its rights to use the Licensed Product licensed hereunder to any business entity of which Customer is and continues to be a controlling partner or majority shareholder ('Assignee'), for operations within a particular territory.").

Furthermore, Safelite retained the right to substantially modify its license agreement with N'Site and only needed to notify HQ of such revised terms. In this regard, the Safelite/HQ agreement expressly stated that the rights that Safelite may choose to grant to N'Site could be "substantially different" than those in the Revised License agreement that Safelite provided to HQ at the time of the Safelite/HQ agreement.[5] Exhibit A.1. to HyperQuest's Opposition. If Safelite had given HQ exclusive rights as HyperQuest alleges, Safelite could not have retained an unrestricted ability to enter into a Revised License agreement with N'Site. See *Althin*, 874 F. Supp. at 843 (licensor's retention of substantial rights deprived licensee of standing to sue as an exclusive licensee).

For these reasons as well, the Safelite/HQ license is non-exclusive.

### 3. HyperQuest Does Not Have The Exclusive Right To Distribute The eDoc Software Because Safelite Placed Restrictions On HQ's Ability To Do So.

HyperQuest argues that Safelite granted HQ the exclusive right to distribute the eDoc Software. Safelite, however, placed substantial restrictions on HQ's ability to distribute the software. Safelite's agreement with HQ provided that HQ could sub-license or otherwise convey the software to a third party only under such terms and conditions as dictated by Safelite. *See* Exhibit A.1. to HyperQuest's Opposition at ¶ 2(a). Moreover, Safelite limited the persons or entities to which HQ could transfer or sub-license the software without first obtaining Safelite's prior written consent. *Id.* at ¶ ¶ 2(a)

---

[5] "Safelite agrees to periodically apprise HQ of the status of its discussions with N'SITE regarding the execution of the Revised License and in the event the Revised License is modified to include terms substantially different than the Revised License provided to HQ, Safelite will advise and include HQ in the determination of the final terms of the Revised License." Exhibit A.3. to HyperQuest's Opposition at Section 2(b).

and 3(b). As set forth above, a licensor's retention of rights is inconsistent with an exclusive grant of those rights to the licensee. *See Davis*, 505 F.3d at 101.

    4.    Safelite's Retention of Its Ownership Rights Is Confirmed By The Express Provisions Of The Safelite/HQ License Agreement.

The conclusion that Safelite did not transfer ownership of any of the rights that it licensed to HQ is further buttressed by the fact that Safelite expressly retained its ownership rights in "all right, title and interest in and to the eDoc Software." In this regard, section 3(a) of the Safelite/HQ agreement provides:

> 3 "(a) Ownership prior to Full Integration.[6] Subject to Section 3(b) below, **all right, title and interest in and to the eDoc Software (including, but not limited to, all Intellectual Property Rights) will remain the exclusive property of Safelite**, and all right, title and interest in and to the HQ Modifications shall vest in Safelite upon creation. Subject to Section 3(b) below, **all Intellectual Property Rights in or related to the eDoc Software are and will remain the exclusive property of Safelite**, and all Intellectual Property Rights in or related to the HQ Modifications will be the exclusive property of Safelite. Subject to Section 3(b) below, HQ assigns all rights, title, and ownership interest in the HQ Modification to Safelite." (emphasis added).

Thus, the agreement makes it clear that Safelite, not HQ, retains ownership of all Intellectual Property Rights in the eDoc Software, including the three exclusive rights to the copyright that HyperQuest alleges were transferred to HQ and including the right to enforce those rights. Accordingly, HyperQuest is merely a non-exclusive licensee and lacks standing to pursue its claims. *See Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.,* No. 8:03 CV 527, 2006 WL 208830, *5 (D. Neb. Jan. 26, 2006) (finding that plaintiff lacked standing to pursue claim for copyright infringement where copyright

---

[6]    The only eDoc Software relevant to the present motion is the eDoc Software provided by Safelite to HQ and not any HQ Modifications or Future Modifications referred to in Section 3(b). In this regard, HQ was granted "ownership" interests only with respect to Future Modifications, which again have not been alleged by the plaintiff to be at issue in the present lawsuit.

owner authorized plaintiff to use its copyrighted work but retained for itself all the other intellectual property rights).

In summary, when Safelite extended its purportedly "exclusive" license to HQ, at least two other parties—Safelite and N'Site—also had rights to reproduce, prepare derivative works of, and distribute the eDocs software. Accordingly, HyperQuest does not have exclusive ownership of any of these particular rights. Because HyperQuest does not possess these rights exclusively, it does not have standing to enforce them.

### III.  CONCLUSION

It is important to note that, had Safelite or HyperQuest promptly taken action against N'Site for its alleged copyright infringement of the eDoc Software, UDIC would never have spent $700,000 to purchase the N'Solutions software with its allegedly cloudy title, nor would UDIC have spent thousands more to integrate the software into its business. Had prompt action been taken, UDIC would not have innocently made this purchase and been dragged into this litigation. Notably, the present law suit was delayed:

- 4 ½ years after Safelite acquired the copyright in the eDoc software and initially notified N'Site of N'Site's alleged breach of the Quivox/N'Site license (Pl.'s Compl. ¶¶ 17-19);
- 3 ½ years after HQ received its "exclusive" license to the eDoc software (Pl.'s Compl. ¶ 23); and
- 1 ½ years after UDIC allegedly began infringing the copyright to the eDoc software (Pl.'s Compl. ¶ 29).

For all of the reasons set forth herein and for the reasons stated in their opening memorandum, the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction should be granted.

                                            Respectfully submitted,

                                            s/ Paul R. Kitch
                                            Paul R. Kitch
                                            pkitch@nixonpeabody.com
                                            Jodi Rosen Wine
                                            jwine@nixonpeabody.com
                                            Elizabeth W. Baio
                                            ebaio@nixonpeabody.com
                                            NIXON PEABODY LLP
                                            161 N. Clark St., 48th Floor
                                            Chicago, IL 60601
                                            (312) 425-3900

                                            Attorneys for Unitrin Direct Insurance Company

## CERTIFICATE OF SERVICE

The undersigned certifies that **Unitrin Direct Insurance Company's Reply in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction** was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

s/ Paul R. Kitch___
One of the Attorneys for Unitrin
Direct Insurance Company
