UNITED STATE DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HYPERQUEST, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08 C 483 |
| N'Site Solutions, Inc., et al., | ) | **Honorable Milton I. Shadur** |
| Defendants. | ) | **Magistrate Judge Michael T. Mason** |

## N'SITE SOLUTIONS, INC'S SUPPLEMENTAL REPLY

As authorized by this Court's Minute Order[1], Defendant, N'Site Solutions, Inc. n/k/a ClaimHub, Inc. ("N'Site"), hereby replies to Hyperquest, Inc.'s ("HQ") Supplemental Opposition to Defendants' Motions to Dismiss Complaint (the "Motion").

Taking to heart the Court's request not to till ground already plowed[2], N'Site offers only two brief points supplementing its prior still-viable, valid arguments. Namely, 1) HQ's license lacked any express or implied promise to not license the eDocs product to others and, thus, HQ's license is not exclusive; and 2) Mr. Hogan's affidavit is irrelevant to this Court's present analysis.

**The Definition of Exclusive License**:  The parties hereto agree that the issue before this Court turns on the proper definition of an "exclusive license".  HQ correctly points out that the Seventh Circuit has posited the applicable definition for an "exclusive license."  Specifically, the Court stated "[i]n an exclusive license, the copyright holder permits the licensee to use the protected material for a specific use and further promises that

---

[1]  This document will be filed on the Court's deadline of April 28, 2008 and hand-delivered to chambers via Federal Express on April 29, 2008 in accord with local rule.
[2]  In that vein, N'Site does not restate facts, does not define certain factual terms, or advance arguments contained in the parties' prior filings.

1

the same permission will not be given to others." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)[3].

**Under this definition, HQ did not get an exclusive license**:  Assuming that HQ's license did, in fact, give to it the right[4] to use eDocs for a specific purpose, the license lacked any promise that the "same permission" would not be given to others to "use" eDocs.

- Pursuant to Section 2(a) of the License Agreement, HQ was provided the right to ". . . develop . . ." the eDocs Software.  (*See* License Agreement, a copy of which is attached hereto as ***Exhibit "1"***.)  Pursuant to Section 2(b) of the license agreement, Safelite expressly retained the right to " . . . license the eDoc Software to third-parties for the purposes of . . . development." (*See **Exhibit "1"***.) Clearly, Safelite did not provide an exclusive license because it retained the right to license the product to third parties for the same use licensed to HQ.

- Pursuant to Section 2(b) of the License Agreement, HQ and Safelite agreed that Safelite was in the process of negotiating a "Revised License" with N'Site. (*See **Exhibit "1"***.)  Further, HQ acknowledged receiving the "latest draft" of that anticipated Revised License.  Clearly, Safelite and HQ specifically anticipated that the Revised License could contain new provisions and an increased scope.  In fact, the only requirement in the License Agreement that limited Safelite's power to license eDocs to N'Site was a promise to keep HQ "apprised" of the final terms of the Revised License with N'Site. (*See **Exhibit "1"***.)  Thus, HQ took its license subject to the understanding that Safelite could enter into a **new** license with N'Site for N'Site's use of eDocs.  The scope of the use granted to N'Site could have covered rights and uses also grated to HQ.  Thus, Safelite left open the possibility that **after** the grant to HQ, it could grant the very same uses to N'Site.

---

[3]  HQ ventures on a detailed discussion of patent cases in an attempt to divine a definition of "exclusive license" under copyright law.  Of course, the Seventh Circuit cited a patent case in its determination of the definition of "exclusive license" under copyright law.  *See, I.A.E., Inc.* 74 F.3d at 775 (citing *Western Elec. Corp. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118-19 (2d Cir. 1930) (determining an exclusive patent license is 'leave to do a thing, and a contract not to give leave to anybody else to do the same thing')).  However, this Court has the Seventh Circuit's definition and must base its decision on that strait-forward definition.  Thus, there is no need for this Court to venture on a wide-scale analysis of such licenses under patent law.  If it were so inclined, however, its result should be the same.

[4]  At this stage of the litigation, N'Site does not contest this point, but neither admits it.

2

Thus, Safelite (in its agreement with HQ) made clear that it could enter into subsequent licenses with third parties for uses granted to HQ. Moreover, Safelite could enter into a new competing license with N'Site, for the same uses licensed to HQ. Thus, because Safelite failed to promise not to give the same permission to others, HQ fails the definition of an exclusive licensee found in *I.A.E., Inc.*.

Moreover, HQ's status must be as either an exclusive licensee or as a non-exclusive licensee. Simply put, it cannot be both. Because HQ is not an exclusive licensee, it lacks standing to enforce the copyright as to ***any entity, including Defendant Unitrin***.

**Mr. Hogan's Affidavit is not Relevant to the issue confronting this Court**: Finally, HQ relies upon the self-serving statements of its officer, Mr. Hogan, (contained in his affidavit) to determine what he did or did not intend or understand with regard to HQ's license from Safelite. Under the Copyright Act, any grant of an exclusive license must be in writing. "A copyright owner may transfer to another person any of the *exclusive* rights the owner has in the copyright; however, such a transfer must be made in writing." *I.A.E., Inc.*, 74 F.3d at 774-75 (citing, *inter alia*, 17 U.S.C. §204). Since the transfer of an exclusive right may only be done by writing, it follows, *a fortiori,* that only the contents of the written license should be used to determine the extent of the license and whether such license is exclusive. Simply put, Mr. Hogan's beliefs do not alter the scope or nature of the license in this case or remedy the lack of HQ's standing to pursue this matter. Put another way, if oral statements or inferences were employed to establish the scope of the license in this matter, then, by definition, the grant would have to be non-exclusive and HQ would lack standing.

**Conclusion**: Because HQ is not an exclusive licensee under the Copyright Act, and for the reasons set forth in N'Site's prior submissions, HQ lacks standing and this matter

must be dismissed with prejudice for that reason as to all counts and all Defendants for lack of subject matter jurisdiction.

                                       Respectfully submitted,

                                       _____/s/_____
                                       Steven L. Tiedemann

                                       8820 Columbia 100 Parkway, Suite 400
                                       Columbia, Maryland 21045
                                       (410) 884-1960
                                       (410) 884-1457 (fax)

                                       Attorney for N'Site Solutions, Inc.

Certificate of Service

     I hereby certify that on the 28th day of April, 2008, the above was served on counsel for Plaintiff and for Defendant Unitrin via the ECF system.

                                       _____/s/_____
                                       Steven L. Tiedemann