UNITED STATE DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Hyperquest, Inc. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08 C 483 |
| N'Site Solutions, Inc., et al., | ) | **Honorable Milton I. Shadur** |
| Defendants. | ) | **Magistrate Judge Michael T. Mason** |

### N'SITE SOLUTIONS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR 17 U.S.C.A. §505 ATTORNEY'S FEES AND HEARING REQUEST

Defendant, N'Site Solutions, Inc. n/k/a ClaimHub, Inc. ("N'Site"), hereby files this Memorandum in support of its Motion for Attorney's Fees ("Motion").

### *Preliminary Statement*

N'Site seeks its attorney's fees in this matter pursuant to 17 U.S.C. §505 (the "Act"). In this Circuit, there is a "very strong" presumption that when the prevailing party in a copyright action is the Defendant, who by definition received no award from the suit, attorney's fees should be awarded. Moreover, Hyperquest's conduct, and the circumstances of this case, support such an award. N'Site, as part of its agreement with its customer (*i.e.,* Defendant Unitrin Direct Insurance Company), indemnified and provided the defense for Unitrin. (*See* Tiedemann Letter Re: Indemnification, a copy of which is attached hereto as ***Exhibit "1"***.) Thus, N'Site seeks attorney's fees for Unitrin also.

*Argument*

The leading case concerning attorneys fees under the Act is a Supreme Court case, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 11 S.Ct. 1023 (1994), in which the Court made clear that a court may award attorney's fees to the prevailing party, either plaintiff or defendant. *Id.,* 510 U.S. at 534. However, since the *Fogerty* decision, the Seventh Circuit Court of Appeals has gone further and has established a "very strong" presumption towards awarding attorney's fees to defendants, such as N'Site and Unitrin. *See Assessment Technologies of WI, LLC v. WIREData, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004); *see also Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.2d 822, 824 (7th Cir. 2005) (recognizing *WIREData*'s holding of a "strong presumption" in favor of a prevailing defendant.)

Setting forth the applicable standard, directly applicable to and controlling the disposition of this matter, the *WIREData* Court stated:

> As we said with reference to the situation in which the prevailing plaintiff obtains only a small award of damages, 'the smaller the damages, . . . the stronger the case for an award of attorneys' fees **….** [W]e go so far as to suggest, by way of refinement of the *Fogerty* standard, that the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d [608,] 610[(7th Cir. 2002)]; *see also Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996). **When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong.** See *Diamond Star Building Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994). For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights.
>
> * * *

> **The point is only that when a meritorious claim or**
> **defense is not lucrative, an award of attorneys' fees may**
> **be necessary** to enable the party possessing the meritorious
> claim or defense to press it to a successful conclusion rather
> than surrender it because the cost of vindication exceeds the
> private benefit to the party. **The best illustration is in fact a**
> **case like this, where the party awarded the fees, being**
> **the defendant, could not obtain an award of damages**
> **from which to pay his lawyer no matter how costly it was**
> **for him to defend against the suit.**

*WIREData, Inc.*, 361 F.3d at 436-37 (bold ellipses, internal citations, and

quotes in original) (emphasis in bold-underline added.)

Of course, this is exactly the position faced by N'Site and its indemnified customer,

Unitrin.  Both defendants in this matter succeeded, had to institute and defend multiple

motions, and cooperated with overly-broad discovery in a case in which the Plaintiff lacked

the standing to proceed.  Both ran up large legal bills in the process and are now "stuck".

As put by the *WIREData* Court, there is no "award of damages from which to pay" N'Site's

and Unitrin's lawyers. Their only avenue for relief and the only fair disposition at this point,

is an award of attorney's fees against Hyperquest.

N'Site believes it is entitled to have its fees paid by Hyperquest simply because it

benefits from the "strong presumption" in its favor, subject to this Court's discretion of

course.  Nevertheless, when this Court considers the conduct of Hyperquest, and the nature

and course of the litigation, there is even more reason to award fees and costs to the

Defendants.  Examples of these additional circumstances, supporting a fee award, are:

1.  Hyperquest purposefully included Unitrin in this case so that jurisdiction could

    be proper in Chicago.  The only logical reason for this choice (as Unitrin

    happens to be located in Chicago and is only one of many N'Site customers) was

    so that Deborah Hogan, Esq. (the wife of Hyperquest's owner Jeff Hogan) could

    represent Hyperquest. Ms. Hogan is admitted only in Illinois.  (*See* Hogan Web

Page, a copy of which is attached hereto as ***Exhibit "2".***) Despite Ms. Hogan's anticipated protestations to the contrary, it seems likely that Hyperquest received (at least) some concession or reduction in it its legal fees from her and her firm. To believe otherwise strains credulity. Instead, Hyperquest should have proceeded, if at all, against N'Site in its state of domicile. It did not do this and, instead, needlessly pulled Unitrin into the matter to obtain jurisdiction where Ms. Hogan could represent her husband.

2.  Hyperquest's Complaint alleged that it was the exclusive licensee of the eDocs software, citing language in Section 2(a) of its agreement with Safelite. (*See* Compl. at ¶23, relevant portions of which are attached hereto as ***Exhibit "3".***) However, Hyperquest failed to cite, or even allude to, Section 2(b) which severely limited its license, and rendered it non-exclusive.

3.  According to Hyperquest's Complaint, Hyperquest believed that N'Site had no right to use the eDocs software after October 1, 2003. (*See* ***Exhibit "3"*** at ¶25.) Hyperquest was awarded its license in July of 2004. (*See* ***Exhibit "3"*** at ¶23.) Nevertheless, Hyperquest inexplicably delayed 3 years and 6 months to bring its January 2008 action.

4.  Because Plaintiff's attorney Deborah Hogan was unwilling to agree to an extension of time for N'Site and Unitrin to respond to the Complaint in this case, refused attempts to engage in good-faith discussions to settle this case, and insisted on pressing for immediate and comprehensive discovery, Defendants were forced to work on an expedited basis and address a substantial number of issues, including detailed negotiation of a Protective Order concerning Safelite that did not produce any document supporting Hyperquest's position on its

standing.  (*See* Tiedemann and Kitch Affidavits, attached hereto as ***Exhibits "4"*** at ¶8 and ***"5"*** at ¶19, respectively.)

5.  Hyperquest's over-the-top litigation posture is best demonstrated by Ms. Hogan's initial letter to Unitrin (and a near-duplicate sent to N'Site) wherein she stated that Hyperquest would "not agree to any extension of time for [Defendants] to answer or otherwise plead in response to the Complaint.  (*See* Hogan Letter, a copy of which is attached hereto as ***Exhibit "6"***.)

6.  After being limited to discovery on one issue (*i.e.,* whether the N'Site-Safelite license had ever been properly terminated) by order of this Court, Hyperquest ignored this Court and proceeded on an unfocused discovery expedition inquiring as to issues related to the merits of Hyperquest's underlying claim. Specifically, Hyperquest asked:

    a.  whether N'Site contended it had the right to distribute the eDocs software (*see* Interrogatories to N'Site, a copy of which is attached here to as ***Exhibit "7"*** at Interrogatory No. 6);

    b.  whether N'Site contends that it had the right to make derivative works of eDocs (*see* ***Exhibit "7"*** at Interrogatory No. 8);

    c.  whether N'Site contends that it had the right to sub-license eDocs (*see* ***Exhibit "7"*** at Interrogatory No. 10);

    d.  for all documents reflecting communications between N'Site and Safelite "in any way relating" to the license (*see* Requests for Production to N'Site, a copy of which is attached hereto as ***Exhibit "8"*** at Request No. 1);

e.   for all documents "in any way reflecting" communications between N'Site and Safelite "in any way relating" to "draft or proposed" licenses (*see* ***Exhibit "8"*** at Request No. 2); and

f.   all documents "in any way relating" to communications between N'Site and Safelite's predecessor-in-interest in the eDocs software (Quivox) regarding the license (*see* ***Exhibit "8"*** at Request No. 3).

7.   Finally, Hyperquest sought, and apparently expected, its own attorney's fees to be part of its remedy in this case.  (*See* ***Exhibit "3"*** at Addendum clause.) Perhaps this is the reason why Ms. Hogan was so eager to pull Unitrin into the matter to obtain jurisdiction in Illinois.  It seems only equitable that N'Site should be entitled to the same relief that Hyperquest felt it deserved.

N'Site believes that, even absent the above-cited conduct, a fee award is presumptively proper in this matter under *WIREData*.  However, these facts further support the award. The amount of the fees sought by N'Site, for itself and for Unitrin, is set forth here:

1.   Costs and Expenses for N'Site:           $1,198.67
     (includes travel, hotel, filing fees)[1]

2.   N'Site outside counsel:                  $945.00
     (bill for N'Site's attorney involved
     in prior Safelite transactions to review
     and produce documents to
     Hyperquest.)[2]

---

[1]  *See* Itemized Account Statement, a copy of which is attached as ***Exhibit "9"***.

[2]  *See* Redacted Summit Law Group Bills, a copy of which are attached hereto as ***Exhibit "10"***.  *See also* ***Exhibit "4"*** at ¶10.

| | | |
|---|---|---|
| 3. Counsel fees for N'Site[3]: | | $46,315.00 |
| 4. Counsel fees for Unitrin[4]: | | $171,390.00 |
| 5. Costs and Expenses for Unitrin[5] | | $2,972.00 |
| **Total Due:** | | **$222,820.67** |

This amount (*i.e.*, $222,820.67) is reasonable and appropriate in this case. It is true that the Seventh Circuit has held that, even with the strong presumption in favor of awarding fees to prevailing defendants, the fees must, nevertheless, be reasonable. *See Woodhaven Homes & Realty, Inc.*, 396 F.2d at 825 (where Plaintiff sought only $55,000 in its complaint, Court hinted that fee to Defendant of over $220,000 was subject to review by trial court on remand to determine if the fee was reasonable). This Court, then, must consider if $222,820.67 is reasonable, in light of the circumstances of this case.

In fact, Plaintiff Hyperquest sought much more than the $55,000.00 sought by the plaintiff in *Woodhaven Homes & Realty, Inc.* Defendants sought temporary and permanent injunctive relief against the Defendants that, if granted, could have put them both out of business or (at the very least) significantly hampered the operations and profitability of both companies. Hyperquest further sought disgorgement of profits from Unitrin, a publicly-traded company with a $2.4 Billion market capitalization, over 6 million policy holders, and over $9 Billion in assets. (*See* Market Reports, copies of which are attached hereto collectively as ***Exhibit "11"***). The harm to both Defendants, had Plaintiff succeeded, would

---

[3] *See* Tiedemann Affidavit and Bill for Services, attached as ***Exhibit "4"***. Note that Mr. Tiedemann serves as General Counsel to JPB Enterprises, Inc., an investor in N'Site. He is not General Counsel to N'Site and is not an employee or officer of N'Site. Also, even if Mr. Tiedemann were considered N'site's "General Counsel" for the purposes of this motion, General Counsel fees are recoverable in copyright actions. *See Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 669-70 (S.D.N.Y. 2001).

[4] *See* Kitch Affidavit and Bill for Services, attached hereto as ***Exhibit "5"***.

[5] *See* ***Exhibit "5"***.

have far exceed the Defendants' attorney's fees and expenses in this case. Simply put, Defendants had no choice but to fight Hyperquest's claim aggressively. In light of the potential damage from the equitable remedies sought by Hyperquest and Hyperquest's conduct of the litigation, Defendants reasonably incurred the expenses they now seek. Furthermore, the attorneys providing the services, or attorney's familiar with the work of such attorneys, have indicated that the fees and expenses incurred were necessary and reasonable under the circumstances of this case. (*See* ***Exhibits "4"*** and ***"5"***.)

## Conclusion

N'Site Solutions, Inc. n/k/a ClaimHub, Inc. respectfully requests that it be awarded the amount of **$222,820.67** incurred as costs and attorney's fees in defending this matter as to both Defendants. Unitrin's counsel has indicated that Unitrin consents to this motion.

Respectfully submitted,

_____/s/_____
Steven L. Tiedemann

8820 Columbia 100 Parkway, Suite 400
Columbia, Maryland 21045
(410) 884-1960
(410) 884-1457 (fax)

Attorney for N'Site Solutions n/k/a
ClaimHub, Inc.

Defendant respectfully requests a hearing on this motion.

_____/s/_____
Steven L. Tiedemann

CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of May, 2008 I mailed and emailed a copy of the foregoing to:

Deborah Hogan, Esq.
Goldberg Kohn
55 East Monroe Street
Suite 3300
Chicago, Illinois   60603-5792
Deborah.hogan@goldbergkohn.com

and to

Paul Kitch, Esq.
Nixon Peabody
161 N. Clark Street
48th Floor
Chicago, IL 60601-3213
pkitch@nixonpeabody.com

_____/s/_____
Steven L. Tiedemann