UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERQUEST, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>N'SITE SOLUTIONS, INC. and UNITRIN )<br>DIRECT AUTO INSURANCE, )<br>)<br>Defendants. ) | Case No. 08 C 0483<br><br>Judge Milton I. Shadur<br>Magistrate Judge Michael T. Mason |

**HYPERQUEST'S SUPPLEMENTAL OPPOSITION TO
N'SITE'S MOTION FOR ATTORNEY'S FEES**

Plaintiff HyperQuest, Inc. ("HQ") hereby files this Supplemental Opposition to N'Site Solutions, Inc.'s ("N'Site") Motion for 17 U.S.C.A. § 505 Attorney's Fees ("N'Site's Motion") and the Memorandum in Support of Motion for 17 U.S.C.A. § 505 Attorney's Fees ("N'Site's Memorandum"). In accordance with the Court's June 18, 2008 Minute Order, this Supplemental Opposition addresses the question of whether the attorneys' fees sought by N'Site are reasonable.

**I.  INTRODUCTION**

An award of attorneys' fees under 17 U.S.C. § 505 is not mandatory, and rests firmly in this Court's equitable discretion. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). The "Fogerty factors" that guide the court's discretion – frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence – strongly dictate against any award of attorneys' fees to N'Site. Fogerty, 510 U.S. at 534, fn. 19, citing Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d Cir. 1986); see

HyperQuest's Opposition to N'Site's Motion for Attorney's Fees ("HQ's Initial Opposition") at 6-12. HQ's complaint is not frivolous, and HQ's allegations that N'Site and Unitrin infringed HQ's exclusive rights have a reasonable basis in fact and in law. HQ's Initial Opposition at 8. Moreover, even if N'Site is deemed a "prevailing party," there was no adjudication on the substance of the infringement claims. This Court did not find that N'Site or Unitrin is innocent, or that HQ's motivation was improper in pursuing this litigation. Id. at 9-11. Accordingly, this is not a case where a fee award is warranted for the sake of deterrence, or to compensate an innocent party wrongly accused. This Court should exercise its discretion by declining to make any award of attorneys' fees to N'Site, in accordance with the Fogerty factors.

If this Court elects to award attorneys' fees to N'Site, however, the Fogerty factors suggest that the amount awarded should be dramatically reduced from that sought by N'Site. N'Site, on behalf of itself and its co-defendant Unitrin Direct Insurance Company ("Unitrin"), seeks $222,820.67 in attorneys' fees and costs for approximately three months of work – the vast majority of which was incurred in connection with a single motion to dismiss. N'Site has provided no evidence that any of the fees sought are reasonable, or that even a single invoice has been paid. N'Site has not proven its entitlement to seek an attorney fee award on behalf of Unitrin, and Unitrin has missed the opportunity to file its own fee motion. A number of tasks could have been done far more efficiently, and the number of hours billed contradict the minimal nature of the work performed. Partners with high billing rates performed most of the work on this matter, including research and clerical tasks – resulting in excessive bills. And the total amount sought is unreasonable because N'Site and Unitrin jointly defended the matter, as they have an almost complete unity of interests – yet

each used its own set of attorneys to perform duplicative work.  For all of these reasons, to the extent that any attorneys' fees and costs are awarded to N'Site, the amount of the award should be significantly reduced from that sought by N'Site.

II.     **THE ATTORNEYS' FEES AND COSTS SOUGHT ARE UNREASONABLE BECAUSE THERE IS NO INDICATION THAT THEY HAVE BEEN PAID**

In support of its Motion, N'Site has provided the Declaration of Paul R. Kitch in Support of Defendants' Motion for Determination of Attorney's Fees (the "Kitch Declaration"), and the Declaration of Steven L. Tiedemann in Support of Defendants' Motion for Determination of Attorney's Fees (the "Tiedemann Declaration").  The Kitch Declaration sets forth a demand for $174,362.00 in attorneys' fees and costs, based on work performed by the Nixon Peabody firm.  Kitch Declaration at ¶ 22.  The Tiedemann Declaration sets forth a demand for $46,415.00 in attorneys' fees, based on work performed by Mr. Tiedemann.  Tiedemann Declaration at ¶ 9.

Noticeably absent from both the Kitch Declaration and the Tiedemann Declaration, however, is any indication that Unitrin or N'Site has paid any of these attorneys' fees and costs.  It is black letter law, in the Seventh Circuit and elsewhere, that "the best evidence of the market value of legal services is what people pay for it."  Balcor Real Estate Holdings v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996).  N'Site has not stated, in its Motion, its Memorandum, the Kitch Declaration, or the Tiedemann Declaration, that any of the bills have been paid.  Nor does N'Site, who purportedly will be paying Unitrin's legal bills, ever state that it believes that Unitrin's bills are reasonable.  It is quite possible that the legal bills of both N'Site and Unitrin may never be paid, or will only be paid at a

sizable discount.  It is therefore impossible to determine whether the amounts billed are reasonable using a fundamental metric of reasonableness:  willingness to pay.  Id.

Furthermore, N'Site claims, with nothing more than its own say-so (a letter stating that it will indemnify Unitrin), that it is indemnifying Unitrin for the attorneys' fees and costs incurred by Unitrin in defense of this litigation.  But N'Site has presented no direct evidence of actual indemnification, and no evidence whatsoever of payment of Unitrin's attorneys' bills.  Moreover, N'Site has no right to seek the $174,362.00 billed by Unitrin's attorneys simply because it asserts that it has a contractual obligation to Unitrin to pay those fees.  N'Site's fees are *not* $46,415.00 plus $174,362.00 – they are only $46,415.00 (to the extent that such fees are recoverable), and this is the total amount N'Site is entitled to seek.  For example, if N'Site had prevailed on the motion to dismiss, but Unitrin had not, N'Site could not seek fees on behalf of Unitrin even if N'Site ultimately was obligated to pay Unitrin's fees pursuant to an agreement to indemnify.

Accordingly, Unitrin should have filed its own fee motion – the time for filing of which has long since passed.  For this reason, N'Site should be limited to seeking reimbursement of only its own attorneys' fees and costs, and not those of Unitrin – and Unitrin should be barred from recovering any fees.

### III. N'SITE HAS PROVIDED NO EVIDENCE THAT THE ATTORNEYS' FEES SOUGHT ARE REASONABLE

Neither the Kitch Declaration nor the Tiedemann Declaration contains any evidence that the rates billed are market rates, or are reasonable.  The Kitch Declaration simply states that "*[o]n information and belief*, the hourly rates charged by [Nixon Peabody] are consistent with the market rates charged by other firms of similar size and capability as

Nixon Peabody." Kitch Declaration at ¶ 15 (emphasis added). The Tiedemann Declaration similarly states that "*[o]n information and belief,* the hourly rates charged by me are consistent with the market rates charged by senior lawyers for corporate and IP litigation in Maryland." Tiedemann Declaration at ¶ 6 (emphasis added). This is not evidence of market rates. This is not evidence of anything.

Moreover, neither the Kitch Declaration nor the Tiedemann Declaration provides any examples of fees awarded to these counsel in any other cases. The Supreme Court has held that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see also Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 556 (7th Cir. 1999). Here, N'Site has proffered no evidence – not even in the attorneys' own affidavit – that the requested rates are reasonable. For this reason, N'Site's request for an award of attorneys' fees and costs should be denied.

## IV. THE AMOUNT OF TIME SPENT TO DEFEND THIS LITIGATION WAS UNREASONABLE

Over the course of ten days, Unitrin and N'Site drafted and filed three initial motions – a Rule 12(b)(4) motion to dismiss, a Rule 12(b)(1) motion to dismiss, and a motion to stay discovery. The 12(b)(4) motion was 2 pages long, the 12(b)(1) motion and accompanying memorandum totaled 8 pages, and the motion to stay discovery and accompanying memorandum totaled 9 pages.

These 19 pages involved the work of 3 Nixon Peabody partners, 2 Nixon Peabody associates, a Nixon Peabody paralegal, and Mr. Tiedemann – for a total of *more than 90 hours* of billed time, at a cost of *nearly $35,000.00*.[1] This is an unreasonable amount of time, and an unreasonable amount of expense, for such a small amount of written product. In fact, the 2-page 12(b)(4) motion, based on a misnomer in HQ's complaint, was a waste of the time and resources of the Court and the parties, as the naming defect would have been corrected if Unitrin had simply consented to a voluntary substitution of parties.

Likewise, the amount of time spent, and the bills generated, in connection with Nixon Peabody's work on Unitrin's reply in support of its motion to dismiss, and Unitrin's supplemental memorandum, are excessive and unreasonable. Each of these filings was 9 pages long, cited minimal case law (beyond that cited by HQ), and contained duplicative arguments. Nevertheless, these 18 pages involved the work of 3 Nixon Peabody partners, a Nixon Peabody associate, and a Nixon Peabody paralegal – for a total of *more than 195 hours* of billed time, at a cost of *more than $86,000.00*. This is an unreasonable amount of time, and an unreasonable amount of expense, for such a small amount of written product.

The amount of time spent by Nixon Peabody in responding to HQ's discovery requests is also unreasonable. The Court directed HQ to conduct very limited discovery on a single topic: whether N'Site's prior license had ever been terminated. In accordance with the Court's instruction, HQ served Unitrin with 2 interrogatories and a single document request. Unitrin responded by: (a) providing stock objections; (b) answering the interrogatories with the responses "it is unaware of communications falling within this interrogatory"

---

[1]  Because Nixon Peabody's bills often contain multiple tasks in a single day's entry, it is impossible to determine the precise portion of each entry that is attributable to a particular task. Accordingly, the numbers presented here are approximated.

(Interrogatory No. 1) and "it is without information as to the identity of such individuals" (Interrogatory No. 2); and (c) responding to the document request by stating that it "does not believe it has documents responsive to this request." UDIC's Answers to Plaintiff's First Set of Interrogatories at 4; UDIC's Responses to Plaintiff's First Set of Document Requests at 4 (copies of which are attached to HQ's Initial Opposition as Group Exhibit 1 to Exhibit A). These responses – which convey the simple fact that Unitrin has no information about the topic of inquiry – resulted in *nearly 50 hours* of time billed by Nixon Peabody, at a total cost of more than $17,000.00. These nearly 50 hours included work performed by 2 partners, an associate, a paralegal, and a word processing specialist. This is an unreasonable amount of time, and an unreasonable expense, to provide boilerplate responses stating that Unitrin has no information about the topic of inquiry.

        Nixon Peabody also billed for clerical time, including time spent by a "word processing specialist," a librarian, and a legal assistant. Time spent on clerical tasks is disallowed in a fee request. See People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1315 (7th Cir. 1996). The amounts billed by the word processing specialist ($324.00) and the librarian ($907.50) should not be awarded because the tasks are clerical. The amounts billed by the legal assistant for similar tasks, such as the preparation of courtesy copies or the printing of documents for the file, should also not be awarded because the tasks are clerical (approximately $900.00).

        Mr. Tiedemann billed a significant amount of time, at considerable cost, for hearing attendance and travel – 33 hours, for a total charge of $11,550.00. In fact, of all the tasks performed by Mr. Tiedemann, hearing attendance and travel comprise the largest percentage of Mr. Tiedemann's bill (25% of the total bill). Mr. Tiedemann spent more time

traveling to and attending hearings than he did drafting motions. Given that N'Site and Unitrin pursued a joint defense, and Mr. Tiedemann resides in Maryland, this excessive expense could have been significantly reduced by Mr. Tiedemann participating in the hearings by telephone (as suggested by the Court) or by retaining local counsel.

### V.   NIXON PEABODY PARTNERS AND MR. TIEDEMANN PERFORMED A DISPROPORTIONATE AMOUNT OF WORK, INCLUDING WORK THAT SHOULD HAVE BEEN DONE BY ASSOCIATES

Nixon Peabody partners – billing at rates ranging from $470 to $605 per hour – billed more than 60% of the hours spent on this matter, for a total of $128,728.00. Mr. Kitch, who bills at $495 per hour, billed 50% of the hours spent on this matter, amounting to 60% of the total bills presented by Nixon Peabody ($102,613.50). These numbers stand in direct contrast to Mr. Kitch's claim that he "deferred as much of the work as [he] could" to associates and paralegals. Kitch Declaration at ¶ 18. The Nixon Peabody associates and the legal assistant staffed on this matter, whose billing rates are significantly lower than those of the Nixon Peabody partners, only account for $44,553.50 in legal fees – approximately 35% of the amount billed by partners. There is no question that associates and paralegals could have done more of the work on this matter, at a significant cost savings.

Moreover, a number of entries for Nixon Peabody partners Kitch, Mills, and Wine show them engaging in associate- or paralegal-level work, such as legal research, the "organizing" of materials, and the "downloading" of briefs and exhibits. Much of this work could have been "deferred" to associates – or should not have been billed at all because it is clerical – which would have resulted in a significant reduction in the bills.

Similarly, Mr. Tiedemann, acting as General Counsel to JPB Enterprises, Inc. (an investor in N'Site) but apparently billing N'Site as a sole practitioner, charged what he

considers "senior lawyer" rates for corporate and IP litigation. Tiedemann Declaration at ¶ 6. In this capacity, Mr. Tiedemann worked alone, billing $46,315.00 at $350 per hour. Much of the work performed by Mr. Tiedemann could have been done by associates or paralegals billing at much lower rates, which would have resulted in a significant reduction in the bills.

The amounts billed by Summit Law Group, representing N'Site, should be reduced by at least $906.50 because the task descriptions for this work were completely redacted – and there is no way to determine the nature of the work performed.

Finally, there is considerable overlap between the work performed by N'Site's attorneys and Unitrin's attorneys. The vast majority of the motion practice consisted of joint motions, and N'Site's alleged indemnification of Unitrin further suggests a complete unity of interests. There is no good explanation for Mr. Tiedemann, Summit Law Group, and Nixon Peabody to spend significant hours doing duplicative work, when a single set of lawyers could have done the work for much less. Any attorney fee award should be reduced to account for this overlap.

## VI. CONCLUSION

For the foregoing reasons, as well as those stated in HQ's Initial Opposition, N'Site's Motion for Attorneys' Fees should be denied. If this Court elects to award fees, however, the $222,820.67 sought should be significantly reduced because there is no evidence that any of the bills have actually been paid; there is no evidence that the fees sought are reasonable; the amount of time spent on various tasks was unbelievably excessive; and a disproportionate amount of work was performed by senior lawyers at high hourly rates when such work could have been performed by less senior lawyers (or paralegals) at lower hourly rates.

Dated: July 10, 2008

                                          Respectfully submitted,

                                          **HYPERQUEST, INC.**

                                          By: /s/ Deborah Rzasnicki Hogan
                                                    One of Its Attorneys

Deborah Rzasnicki Hogan
Chad A. Blumenfield
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe, Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on July 10, 2008, she caused a copy of **HYPERQUEST'S SUPPLEMENTAL OPPOSITION TO N'SITE'S MOTION FOR ATTORNEY'S FEES** to be served via the Court's ECF/electronic mailing system upon the following:

        Steven L. Tiedemann
        JPB Enterprises, Inc.
        Suite 400
        8820 Columbia 100 Parkway
        Columbia, Maryland  21045

        Paul R. Kitch
        Jodi Rosen Wine
        Elizabeth W. Baio
        Nixon Peabody LLP
        48th Floor
        161 North Clark Street
        Chicago, Illinois  60601-3213

                                      /s/ Deborah Rzasnicki Hogan