IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HYPERQUEST, INC.,                    )
                                     )
              Plaintiff,             )
                                     )
    v.                               )    No.  08 C 483
                                     )
N'SITE SOLUTIONS, INC., et al.,      )
                                     )
              Defendants.            )

<u>MEMORANDUM OPINION AND ORDER</u>

In this copyright infringement action brought against them unsuccessfully by HyperQuest, Inc. ("HQ"), defendants N'Site Solutions, Inc. ("N'Site") and Unitrin Direct Insurance Company ("Unitrin") are "prevailing parties" for purposes of 17 U.S.C. §505 ("Section 505")--an oft-repeated proposition most recently reconfirmed in this Circuit by <u>Mostly Memories, Inc. v. For Your Ease Only, Inc.</u>, 526 F.3d 1093, 1099 (7th Cir. 2008).  That being so, our Court of Appeals has also frequently weighed in--again most recently in <u>Mostly Memories</u>, <u>id</u>.--with the principle that a prevailing defendant in such cases is armed with a "very strong" presumption that it is entitled to an award of fees under Section 505.

N'Site and Unitrin have consequently moved for the shifting of fees and expenses in the aggregate sum of $260,089.99.[1]  At

---

[1] More precisely, N'Site alone is carrying the laboring oar in the current dispute, having represented that it is obligated to indemnify Unitrin (whose share of the claim is just in excess of $200,000) for the fees and expenses the latter has incurred.

this Court's behest the parties have generated considerable input on the subject, but an examination of those submissions finds them insufficient to produce a reasoned decision at this point as to the precise amount of the fee-and-expense award.

It should be made clear that such uncertainty does not stem from the fact that this Court's dismissal of HQ's lawsuit did not involve any determination as to the validity or invalidity of the copyright at issue. On that score this Court's June 18, 2008 memorandum opinion and order correctly described this passage from <u>Riviera Distribs., Inc. v. Jones</u>, 517 F.3d 926, 928 (7th Cir. 2008)--a case ironically cited by HQ in its initial challenge to the Section 505 request--as a statement that "could also have been written for this case":

> The district court denied Midwest's request for fees, ruling that it is not the prevailing party. The judge wrote that he "did not in any way pass on the merits of the litigation.... [T]here has been no evidence of lack of merit to [Riviera's] copyright infringement claims and no finding with respect to the merits of the case. The Court therefore does not believe that [Midwest is] entitled to prevailing party status on the facts of this case."
>
> This approach supposes that the content of a judge's opinion is what makes a litigant a prevailing party. If the judge sustains a litigant's position on the merits, then it "prevails"; otherwise not. The Supreme Court took a different view in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources</u>, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which holds that a litigant "prevails" (for the purpose of fee-shifting statutes) when it obtains a "material alteration of the legal relationship of the parties," 532 U.S. at 604, 121 S.Ct. 1835, quoting from <u>Texas State Teachers Ass'n v. Garland Independent</u>

2

School District, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  A judgment in a party's favor has such an effect....

Instead the parties' work product has left this Court with a serious concern that the N'Site-Unitrin demand appears to be quantifiably unreasonable.

It is true that in part HQ's submission suffers from the same type of myopic (or perhaps astigmatic) approach that marked a good deal of its earlier activity in this case--a sort of instinct for the capillary rather than the jugular.  Thus HQ's counsel should have realized that their objection based on a lack of showing that the requested amounts had been paid by the clients was almost certainly groundless.[2]  But by contrast, HQ's objections as to excessiveness raise some serious questions--indeed, N'Site's most recent submission (filed August 5) contains this admission as part of its n.1:

> As for the amount of time spent by Unitrin's counsel on the representation, N'Site must, in candor, reveal that it was surprised by the large volume of time charged by Unitrin's counsel.  Of course, such surprise came in "hindsight" and neither N'Site nor its agents have personal knowledge of the actual time spent or the instructions Unitrin's counsel received from its client.  Therefore, it has taken Unitrin's counsel at their word, and has presented their bill, their supporting argument, and documentation supplied by them to this Court for evaluation as to whether those charges were reasonable.

---

[2]  If HQ really had doubts on that score, a simple telephone call to opposing counsel was the obvious way to allay (or to validate) them.

3

That echoes--or perhaps more accurately understates--this
Court's concern as to possible overkill, a concern deepened by
the revelation in that August 5 submission that Unitrin has
succeeded in amassing another $29,000 in fees since the original
Section 505 motion was filed.  In the course of addressing claims
of fees on fees that fee-shifting disputes regrettably tend to
generate, this Court has frequently had occasion to recall
Jonathan Swift's satiric quatrain in which he paralleled the
phenomenon he described to the situation in which "every poet, in
his kind, Is bit by him that comes behind":

>     So, naturalists observe, a flea
>     Hath smaller fleas that on him prey;
>     And these have smaller still to bite 'em;
>     And so proceed ad infinitum.

That echoes--or perhaps more accurately understates--this

Before this Court came to the bench it practiced law for
three decades, at the conclusion of which it coupled its active
practice with acting as the principal billing partner in the
small law firm in which it spent its entire career.  Although its
hourly billing rate at that time is of course dwarfed by today's
startling numbers and thus would not be consulted as even
approaching a yardstick for comparison purposes, this Court's
rate was at or very near the absolute top of the fee scale
charged by lawyers in that era.

More to the point, this Court's long experience in the
active practice (both in the handling of matters and in the
appropriate delegation of functions), fortified by its having

4

spent nearly three decades since then in the judicial evaluation
of fee requests, enables it to reach informed judgments as to the
reasonableness of fees in the current environment.  And the
bottom line in that respect is that it does not find that
N'Site's August 5 submission on the subject of reasonableness,
referred to earlier in this opinion, provides a satisfactory
explanation to support the N'Site-Unitrin claim.

   Contemporaneously with that submission this Court also
received, as it had requested, information from HQ as to the fees
that it had incurred in the matter.  Those fees and expenses
aggregated some $110,000 through May 31, 2008, with about $80,000
of that amount having been incurred after the lawsuit was brought
and N'Site and Unitrin had thus become involved.  That number
appears to this Court to be much closer to the mark as a measure
of reasonableness, although this Court recognizes that some
allowance must be made for the presence of two counsel rather
than one on the N'Site-Unitrin side of the "v." sign.

   What has been said here really echoes the teaching of our
Court of Appeals in this class of cases.  After Assessment
Technologies of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 436 (7th
Cir. 2004) sought to clarify the standards marked out in Fogerty
v. Fantasy, Inc., 510 U.S. 517, 534 & n.19 (1994) by announcing
the "very strong" presumption in favor of awarding fees to a
prevailing party defendant, Woodhaven Homes & Realty, Inc. v.

Hotz, 396 F.3d 822, 824 (7th Cir. 2005) then confirmed the need for reasonableness in quantifying such an award--and in remanding the case for evaluation in those terms, the Court of Appeals took occasion to remark that the $220,000 in fees requested there "seems quite excessive" (id.).  By sheer chance that request was almost identical to the amount initially sought here, even before the fees-on-fees add-on.  This Court's comparable unease at the amount of the current request calls for an early status hearing at 8:45 a.m. September 8, 2008 to discuss the matter further with counsel.

_____

Milton I. Shadur
Senior United States District Judge

Date:  August 22, 2008